**Marvin USSERY, Appellant,**

v.

**Shirley GRAY, Appellee.**

No. 2–90–122–CV.

Court of Appeals of Texas, Fort Worth.

Jan. 30, 1991.

James B. Munford, Fort Worth, for appellant.

Jim Mattox, Atty. Gen., and Charles G. Childress, Austin, for appellee.

Before JOE SPURLOCK, II, FARRIS and DAY, JJ.

## OPINION

DAY, Justice.

This is an appeal arising from a paternity case. An original petition to establish paternity of Suzette Evon Gray was filed by Karl E. Spahr on behalf of Shirley Diane Gray, the child's mother and appellee. The Child Support Enforcement Division of the Texas Attorney General's (AG) Office was subsequently substituted as the mother's counsel. Ussery filed a motion to disqualify the AG alleging that the AG was representing Gray in the case at bar and representing Ussery in a separate suit filed against him to collect child support owed by him to his former wife. The AG's Domestic Relations Office was representing Ussery at the same time in another action. Ussery's motion was overruled during a motion in limine hearing. Near the completion of the trial in this cause, Ussery moved for a mistrial on the grounds that the AG's office divulged information communicated by Ussery to that office during the course of its representation in the child support suit. The trial court denied Ussery's motion for mistrial after conducting a full evidentiary hearing outside the presence of the jury. The jury found that Marvin Ussery, appellant, was the biological father of Suzette Evon Gray. A judgment conforming to that jury finding and setting the terms of support and conservatorship for the child was signed shortly thereafter. Ussery perfected this appeal.

We affirm.

■ Ussery's first and second points of error contend that the trial court erred and abused its discretion in failing to grant his

motion to disqualify opposing counsel and his motion for mistrial because the AG violated the Code of Professional Responsibility. Ussery contests the propriety of the AG's purported dual representation and the AG's improper revelation of confidential facts, including the AG's references to Ussery's failure to pay child support to his former wife, both of which Ussery claims warranted a mistrial. The dispute as to both of these issues focuses on the questions asked by the Assistant AG of Ussery during cross-examination and the subsequent exchange between the trial court, the Assistant AG, and Ussery's counsel, as follows:

MS. DAVIS: [Assistant AG] Who were you married to—What was the name of the woman you were married to?

MR. USSERY: Juanita.

MS. DAVIS: Juanita what?

MR. USSERY: Ussery.

MS. DAVIS: What is her name now?

MR. USSERY: I don't know.

MS. DAVIS: Would it be Juanita Garcia?

MR. USSERY: Possibly.

MS. DAVIS: You don't keep any contact at all with her any more?

MR. USSERY: The Attorney General's Office is supposed to be contacting her, as far as I know.

MS. DAVIS: You told your attorney— Your attorney asked you if you believed in paying your child support. Do you remember making that statement?

MR. PRICE: [Ussery's Attorney] Your Honor, I'm going to object to the questions on this line and have an objection that probably should be made outside of the presence of the jury.

THE COURT: All right. Does it have to do with your motion that was filed earlier?

MR. PRICE: Yes sir.

THE COURT: All right. Please retire the jury.

[Thereupon, the jury left the courtroom and the following proceedings were had out of the presence and hearing of the jury.]

THE COURT: All right.

MR. PRICE: Judge, I'm going to move for a mistrial at this point on the basis that the Attorney General's Office is now getting into information on a case where they are representing my client.

THE COURT: What is the question you are asking?

MS. DAVIS: Your Honor, I'm about ready to ask, in response—First of all, I would like to make it very clear that the Attorney General is not representing Marvin Ussery. We are not now, nor, to my knowledge, have we ever represented Marvin Ussery.

It appears that the DRO is currently representing Marvin Ussery, the Domestic Relations Office.

THE COURT: Let's see. There was a Motion to Disqualify Attorney filed based on the idea that the Attorney General was representing Marvin Ussery in a separate suit to collect child support.

Now, I will be glad to look at the file. I will allow questioning as to whether Mr. Ussery is represented by the Attorney General or the DRO. If he is represented by the Attorney General's Office, then I will not allow you to go into anything concerning anything whatsoever about this, because this has already been brought up at the pretrial.

MS. DAVIS: Yes, Your Honor. It appears to me that we do not represent Mr. Ussery, nor have we ever.

THE COURT: Well, Mr. Ussery knows whether he went to the Attorney General. The file will indicate who filed it.

MS. DAVIS: The file indicates that the DRO filed the latest action that's taken place. And as far back as I see, there is nothing in this case to indicate that either party—I believe that Ms. Garcia—

THE COURT: I will allow either you or Mr. Price to examine the witness as to whether or not he's ever been represented by the Attorney General's Office.

. . . .

MR. PRICE: Mr. Ussery, are you represented by the Attorney General's Office now in your claim for child support?

MR. USSERY: Yes.

MR. PRICE: Did you originally file some time ago, about two years ago, through the Domestic Relations Office?

MR. USSERY: Yes.

MR. PRICE: After that time, did you switch to the Attorney General's Office?

MR. USSERY: Yes.

MR. PRICE: And was there action in the case recently in which your ex-wife was located?

MR. USSERY: There is supposed to be— according to Mrs. Brigham, there's supposed to be action on the case at the present time.

. . . .

MS. DAVIS: Your Honor, I do hear that—I don't know when he approached our office, but I understand that he has filed a case with us. It appears that might have been subsequent to our bringing this lawsuit.

The file indicates that the most recent representation was by the Domestic Relations Office. We did not—How we gained this information is, when Mr. Ussery testified earlier that he believed in paying child support, we decided to investigate his child support records, and we went to the Domestic Relations Office and pulled his record at that time.

There is nothing in his file to indicate his representation.

. . . .

THE COURT: Do you want me to declare a mistrial or not?

MS. DAVIS: No, sir, I don't want you to declare a mistrial.

THE COURT: Well, I am not going to right now, but I am going to instruct the jury that they will not consider the questions you have asked in any way whatsoever.

MS. DAVIS: I don't believe I have asked—

THE COURT: You have asked this man about the payment of child support. I can't see what it has to do with this particular case anyway, except to, perhaps, question his veracity.

MS. DAVIS: Your Honor, if I could make the record clear on this point. I was not aware and have not been aware

that we represented Marvin Ussery in any way. We, of course, got notice last Friday from Mr. Price's motion that Mr. Ussery had approached us.

Quite frankly, I wonder about Mr. Ussery's motives, since he knew, in fact, we had a suit against him at that time. I understand that Mr.—

THE COURT: I can't imagine why you would bring it up when the Court was aware of it and ruled on this last Friday. Although you weren't here, certainly you were represented by counsel at the time this motion was presented.

MS. DAVIS: Quite frankly, we couldn't find anything at first.

. . . .

THE COURT: There's a very simple way to determine whether he has paid his child support, and that's to go down to the third floor and get the records of the Child Support Office.

MS. DAVIS: And that's precisely what we did, Your Honor, and we pulled the case. We did not go to our office. We did not look into any of our files. I don't know what files are there.

Until they verified just then that we had a case against him, I was not aware—

THE COURT: If you wanted to prove that he hadn't paid his child support, all you had to do was to get somebody up here from the Child Support Office.

MS. DAVIS: Your Honor, we got the certified records from the—

THE COURT: All you had to do was to call the witness.

You have come awful close to a mistrial. I'm not going to grant it.

All right. Call in the jury.

Ussery initially claims that the dual representation of himself and his wife in separate causes of action violates article 10, § 9 of the rules governing the State Bar of Texas (hereinafter Disciplinary Rules). The Rules which form the basis of Ussery's initial contention follow:

**DR 5–105. Refusing to Accept or Continue Employment if the Interests of Another Client May Impair the Inde-**

**pendent Professional Judgment of the Lawyer.**

(A) A lawyer shall decline proffered employment if the exercise of his independent judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, except to the extent permitted under DR 5–105(C).

(B) A lawyer shall not continue multiple employment if the exercise of his independent judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, except to the extent permitted under DR 5–105(C).

(C) In the situations covered by DR 5–105(A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interests of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each.

....

**DR 9–101. Avoiding Even the Appearance of Impropriety.**

[text omitted]

SUPREME COURT OF TEXAS, CODE OF PROFESSIONAL RESPONSIBILITY, DR 5–105, DR 9–101 (1988).

[redacted] Disqualification of an attorney is a harsh remedy. It should only be applied judiciously and with caution because it can be used as an instrument of harassment. *Freeman v. Chicago Musical Instrument Co.,* 689 F.2d 715, 720 (7th Cir.1982); *Arkla Energy Resources v. Jones,* 762 S.W.2d 694, 695 (Tex.App.—Texarkana 1988, no writ). Consequently, a party seeking to disqualify an attorney because of a prior relationship must show a prior attorney-client relationship, and must clearly establish that the matters involved in the pending suit are substantially related to the matters involved in the former representation. *Johnston v. Harris County Flood Control Dist.,* 869 F.2d 1565, 1569 (5th Cir.1989), *cert. denied,* — U.S. —, 110 S.Ct. 718, 107 L.Ed.2d 738 (1990); *Arkla,* 762 S.W.2d at 695. The party seeking disqualification must also demonstrate actual prejudice resulting from the opposing lawyer's service in dual roles. *Ayres v. Canales,* 790 S.W.2d 554, 558 (Tex.1990).

Ussery claims that the two pending cases in which the AG is representing either Ussery or his ex-wife are substantially similar because they involve similar issues: they both address family law matters; they are both affecting the parent-child relationship; they both deal with the subject of child support; and they both consider the issue of the parties' financial abilities as means of determining conservatorship. Ussery also cites several cases which he claims stand for the proposition that "the Attorney General acts like any law firm" which should have, under the Rule and the facts of this case, declined representation in this matter. However, Ussery's reliance on these cases is misplaced because each case cited describes the disqualification of attorneys working within a private setting—not a government or public service environment. In fact, the AG's office is "the state agency designated to administer a statewide plan for child support to provide child support collection, parent locator, and paternity determination services that will enable it and the Texas Department of Human Services to participate in programs established by federal law." TEX.HUM. RES.CODE ANN. § 76.001 (Vernon 1990). As such, this agency has a public service function which is not conducive to the traditional attorney-client relationship. Lawyers in the AG's office do not necessarily represent their "clients" in the same manner as do their counterparts in private law firms.

In an analogous situation, the State Bar of Texas Professional Ethics Committee has determined a Domestic Relations Office may handle cases for two ex-spouses seeking to enforce the provisions of their divorce decree against each other, *so long as the same attorney does not attempt to handle both sides of the case, and the attorneys handling the cases are appropriately screened from information provided by the adverse party.* Tex.Comm. on Professional Ethics, Op. 441, 50 TEX. B.J. 618–19 (1987); *see also State ex rel.*

*Eidson v. Edwards,* 793 S.W.2d 1, 6 n. 6 (Tex.Crim.App.1990). (Committee concluded that when an individual attorney is separated from any participation on matters affecting his former client, vicarious disqualification of a government department is not necessary or wise). The courts have further held that "the movant for disqualification [Ussery] must show that there is a specifically identifiable appearance of the occurrence of improper conduct and that the likelihood of public suspicion or obloquy outweighs the social interest in obtaining counsel of one's choice." *Hoggard v. Snodgrass,* 770 S.W.2d 577, 582 (Tex.App.—Dallas 1989) (orig. proceeding) (citing *Petroleum Wholesale, Inc. v. Marshall,* 751 S.W.2d 295, 297 (Tex.App.—Dallas 1988) (orig. proceeding)). We cannot conclude that Ussery has sustained his burden of proof in this regard. In addition, although Ussery has demonstrated that a prior (or pending) attorney-client relationship existed and that the two suits were substantially related, he did not demonstrate *actual* prejudice resulting from the AG's dual representation.

Thus, we cannot conclude from the record that the AG violated either DR 5-105 or DR 9-101. In so concluding, we find that the trial court did not abuse its discretion by refusing to order a mistrial on such grounds. While we do not believe that the AG's conduct is completely beyond the purview of the Code of Professional Responsibility, we conclude that the Code must be read to accommodate the significant differences in the practices maintained by government lawyers and private practitioners. Ussery's first point of error is overruled.

■ We further find that the trial court did not abuse its discretion by refusing to grant a mistrial on the basis of Ussery's allegation that the AG knowingly revealed a confidence or secret information during the trial of the case at bar. Ussery claims that the AG obtained information relating to a child support action brought by his former spouse and used such information in a subsequent paternity action instituted against him by Shirley Gray. He further asserts that this breach by the AG violates DR 4-101 of the Code of Professional Responsibility. The Code provides, in pertinent part, as follows:

**DR 4-101. Preservation of Confidences and Secrets of a Client.**

(A) "Confidence" refers to information protected by the attorney-client privilege under applicable law, and "secret" refers to other information gained in the professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the client.

(B) Except when permitted under DR 4-101(C), a lawyer shall not knowingly:

(1) Reveal a confidence or secret of his client.

(2) Use a confidence or secret of his client to the disadvantage of the client.

(3) Use a confidence or secret of his client for the advantage of himself or of a third person, unless the client consents after full disclosure.

(C) A lawyer may reveal:

(1) Confidences or secrets with the consent of the client or clients affected, but only after a full disclosure to them.

(2) Confidences or secrets when permitted under Disciplinary Rules or required by law or court order.

(3) The intention of his client to commit a crime and the information necessary to prevent the crime.

(4) Confidences or secrets necessary to establish or collect his fee or to defend himself or his employees or associates against an accusation of wrongful conduct.

(D) A lawyer shall exercise reasonable care to prevent his employees, associates, and others whose services are utilized by him from disclosing or using confidences or secrets of a client, except that a lawyer may reveal the information allowed by DR 4-101(C) through an employee.

SUPREME COURT OF TEXAS, CODE OF PROFESSIONAL RESPONSIBILITY, DR 4-101 (1988).

Ussery contends that this Rule required the trial court to declare a mistrial on the

**238**

ground that all offices, divisions, and sections of the AG's Office, acting as components of a law firm, presumptively shared the confidential information regarding his payment of child support to his former wife. *Kraft, Inc. v. Alton Box Board Co.,* 659 F.2d 1341, 1346 (5th Cir.1981); *see also Arkla,* 762 S.W.2d at 695 (it is presumed that confidential information given by a client to his attorney is shared by the attorney with his partners). Ussery further asserts that such knowledge was imputed to all attorneys working for the AG's Office. Finally, Ussery claims that the two pending suits were so similar that it would be difficult, if not impossible, for the AG's Office to exercise independent judgment.

We agree that the Assistant AG's question regarding Ussery's capacity to pay child support was improper. However, we cannot conclude that the question justified a mistrial. The trial court held that the question, absent other factors, did not warrant a mistrial. The trial court restricted the Assistant AG's use of any information acquired from the Domestic Relations Office in the pending suit. Further, the court instructed the jury not to consider the questions asked in any way. *See Rainbow Exp., Inc., v. Unkenholz,* 780 S.W.2d 427, 434 (Tex.App.—Texarkana 1989, writ denied) (any error resulting from arguments by counsel was cured by court's instruction to jury to disregard such arguments); *International Armament Corp. v. King,* 674 S.W.2d 413, 419 (Tex.App.—Corpus Christi 1984), *aff'd,* 686 S.W.2d 595 (Tex.1985) (party's allegedly improper argument was cured by trial court's instructions). In addition, no other references to Ussery's desire or ability to pay child support were made, nor were records thereof introduced at trial. Thus, we find that the trial court did not abuse its discretion in denying Ussery's motion for mistrial.

The judgment of the trial court is affirmed.