**PANHANDLE STEEL BUILDINGS, INC., Appellant,**

v.

**Jessie W. BENSON, Appellee.**

No. 7429.

Court of Civil Appeals of Texas.

Amarillo.

Dec. 21, 1964.

Gibson, Ochsner, Harlan, Kinney & Morris, Amarillo, Cade & Bowlin, Lubbock, for appellant.

Hackney & Crawford, Brownfield, New & Townes, Denver City, for appellee.

CHAPMAN, Justice.

This is an appeal by defendant below, Panhandle Steel Buildings, Inc., denying appellant's plea of privilege to be sued in Potter County where it is domiciled. Appellee controverted the plea, relying upon Sections 9 and 9a as amended and 23 of Article 1995, Vernon's Ann.Civ.St. The court below held venue was in Yoakum County where appellee lived at the time and where his injury sued upon occurred.

Appellant urges error in the judgment of the trial court in overruling its plea of privilege for the reason that appellee's own testimony established that his injury resulted from a dangerous condition which was open, obvious, and known to him.

Appellee testified that on August 22, 1962, he was working for J. D. Bell Construction Company finishing a concrete walk around a steel elevator under construction for Gutersloh-Anderson Grain Company at the time he was injured. The testimony shows appellant was constructing the building and J. D. Bell was a subcontractor for the ground work, including the sidewalk on which appellee was working at the time of his injury.

The record showed he was an experienced workman in the type construction on which he was engaged on the named date:

"Q. All right, now, in that construction work there for Brown and Root for eleven years, have you worked for any other concerns in construction?

"A. Yes, sir.

"Q. And about how many years all together, then, have you worked in that type of work that was being carried on down there at Gutersloh-Anderson Grain Company in August, 1962?

"A. Well, I have been doing that kind of work since '36."

Therefore, he was a workman of twenty-six years experience.

On the date of injury the record shows a thirty-foot aluminum ladder was leaning up against the elevator on the south side thereof near where appellee was doing finishing work on the sidewalk and that he had "seen the ladder being used there during the time that it was there" by other employees before a concrete mixing truck drove up to deliver concrete for the walk. He helped the driver spot the truck then got down on his knees to work the concrete as it came out of the truck chute. He said at that time the ladder was sitting right between the front wheel and the back, and the door on the cab.

His testimony showed the ladder was not tied; that he was a workman of eleven years experience in metal contruction and erection; and that the ladders are supposed to be tied with a wire or rope.

"Q. All right, and do you know what the usual and normal procedure is on ladders that are placed on the sides of a building?

"A. Yes, sir.

"Q. And what is that procedure?

"A. You are supposed to set a ladder just so many feet out; in other words, where it won't slip, fall on you or fall with a man with it, *and you are supposed to have them tied at all times or lay them down on the ground. That is safety rules, I have been in it for a number of years.*"

All emphases herein are ours.

Appellee also testified that after he had recovered sufficiently, he had his wife and son drive him back out to the construction job and at that time: "they were using their ladders to put them up like you're supposed to do and like you have got to do, but they had them all tied."

When appellee was asked about whirlwinds in the summer months of that area of Texas he testified he was familiar with them and that "you can just get out here and look anywhere on this prairie and if a man is so a mind to, I imagine he could count seven or eight at a time if he just looked different directions." We believe the evidence is clear that a whirlwind is a force that blew the ladder down on appellee. The Latin American truck driver testified the whirlwind came along just before he saw appellee on the ground injured and that *while holding his hat in one hand and a lever of the truck with the other he felt something barely touching his leg.* He looked back and saw appellee on the ground shaking and a step ladder was close to him.

Thus, we have a man with twenty-six years of experience in construction work, such as he was doing on the occasion of his injury; eleven years of experience in metal construction and erection; one who knew that ladders such as the one heretofore mentioned are supposed to be laid down on the ground when not in use or tied where they won't slip or fall; that such procedure is required by safety rules; one who knew of the wind in that area and of the prevalence of whirlwinds and knew the thirty-foot ladder next to which he was working was not tied or secured in any manner such as to keep it from falling. With all this knowledge and experience, under all these conditions, with the truck motor running and the noise of the cement, sand and rock mixture coming down the chute where he could not hear the ladder in the process of falling, he was down on his hands and knees working apparently completely unconcerned as to the danger of the unsecured standing ladder.

With this situation we do not believe, under appellant's own testimony, he can avoid the rules our Supreme Court has established in McKee, General Contractor v. Patterson, 153 Tex. 517, 271 S.W.2d 391 and Halepeska v. Callihan Interests, Inc., Tex.,

371 S.W.2d 368 and other cases therein cited and discussed.

In McKee v. Patterson, supra, the Court said:

"In determining liability, under the defense of voluntary exposure to risk, it is said that one cannot recover for injuries sustained while voluntarily exposing himself to a danger which he either does or should fully realize and appreciate. 38 Am.Jur. 845 et seq., Negligence, Sec. 174, p. 848; Levlon v. Dallas Ry. & Terminal Co., Tex.Civ. App., 117 S.W.2d 876, writ refused; Wood v. Kane Boiler Works, 150 Tex. 191, 238 S.W.2d 172, 174; Schiller v. Rice, 151 Tex. 116, 246 S.W.2d 607, 610."

The court in that case also said:

"A general contractor in control of premises owes a duty to the employees of subcontractors similar to that owed by an owner or occupier of land to his invitees."

■ Thus, appellee, as an employee of a subcontractor, was an invitee of appellant.

In Halepeska v. Callihan Interests, Inc., supra, the Supreme Court in discussing the "no duty" doctrine said:

"* * * the occupier of land or premises is required to keep his land or premises in a reasonably safe condition for his invitees. This includes a duty of the occupier to inspect and to discover dangerous conditions. Smith v. Henger, 148 Tex. 456, 226 S.W.2d 425, 20 A.L.R.2d 853 (1950); Genell, Inc. v. Flynn, Tex., 358 S.W.2d 543 (1962). His duty is to protect his invitees from dangers of which he, the occupier, knows, or (because of his duty to inspect) of which he *should* know in the exercise of ordinary care. If there are dangers which are not open and obvious, he is under a *duty* to take such precautions as a reasonably prudent person would take to protect his invitees therefrom and to warn them thereof. *But if there are open and obvious dangers of which the invitees know, or of which they are charged with knowledge, then the occupier owes them 'no duty' to warn or to protect the invitees. This is so, the cases say, because there is 'no duty' to warn a person of things he already knows, or of dangerous conditions or activities which are so open and obvious that as a matter of law he will be charged with knowledge and appreciation thereof."*

Thus, we would have to say, under the facts stated and the rules of law just quoted that the danger which led to appellee's injury was one which was open and obvious to him and one which he knew about. Therefore, as a matter of law, he was charged with knowledge and appreciation of such danger.

In HALEPESKA the court in discussing McKee v. Patterson, supra, said:

"The holding was that since the invitee-worker had full knowledge and appreciation of the danger, the occupier [appellant here] owed him no duty. If there was no duty, the defendant obviously breached no duty; * * *. The Court observed that the same result would be reached under volenti: the facts were undisputed that with full knowledge and appreciation of the danger, the plaintiff deliberately encountered the risk. In stating the general rules of 'no duty' and volenti, the Court said that where the plaintiff knows and appreciates, or should know and appreciate, he cannot recover."

■ We therefore believe and so hold that appellee, as a matter of law, by his own testimony brought himself within both the "no duty" and volenti doctrines and thus as a matter of law failed to prove a cause of action in Yoakum County.

As stated in appellant's brief, "if the evidence will support a finding in plaintiff's favor, in the absence of any evidence by the defendant, then the plea of privilege should be overruled." Here appellee failed to establish by his evidence facts which would support a finding in his favor because his own testimony established that his injury resulted from a dangerous condition which was open, obvious and known to him.

Upon a trial on the merits, the testimony might take a different turn, so we would want it specifically understood that we are not by this opinion binding ourselves to a holding that appellee could not make a cause to go to the jury on a trial on the merits.

The judgment of the trial court is reversed and the case is ordered transferred to Potter County.