KANSAS CITY SOUTHERN RAILWAY
COMPANY, Appellant,

v.

Granville CARTER, Appellee.

No. 9703.

Court of Appeals of Texas,
Texarkana.

Sept. 6, 1989.

Rehearing Denied Aug. 8, 1989.

Second Rehearing Denied Sept. 6, 1989.

Third Rehearing Denied Oct. 3, 1989.

**912**

William C. Gooding, Gooding & Dodson, Texarkana, for appellant.

Franklin Jones, Jr., Marshall, for appellee.

GRANT, Justice.

Kansas City Southern Railway Company (KCS) appeals an adverse judgment awarding damages to Granville Carter for personal injuries.

Carter initially brought suit against KCS and Trailer Train Corporation for injuries to his back and leg. Trailer Train Corporation was non-suited and dismissed. At the conclusion of the trial without a jury, the court made findings of fact and conclusions of law and entered judgment in favor of Carter in the sum of $673,352.01.

On appeal, KCS contends that the trial court erred in refusing to grant its motion to transfer venue based on Texas Civil Practice and Remedies Code, Sections 15.034 and 15.036, and in failing to grant its motion for new trial based on excessiveness of the damage award.

Carter sustained his injury when he stepped into a pedestal well while loading trailers onto train cars at the Mossville Yard near Lake Charles, Louisiana. Carter was an employee of Kansas City Southern Transport Company, a separate entity from the defendant, which had contracted with the railroad to load and unload trailers from piggyback flatbed cars. The trial court found Carter to be an invitee.

KCS urges that the trial court erred in refusing to grant its motion to transfer venue, as well as its motion for new trial, based on the contention that venue should have been established under Section 15.034 instead of Section 15.036 of the Texas Civil Practice and Remedies Code. The issue is whether Section 15.034 [1] is permissive or mandatory. If Section 15.034 is mandatory, the trial court erred in allowing Carter to establish venue under Section 15.036. In the cases of *Southern Pacific Transportation Co. v. Harlow*, 729 S.W.2d 946 (Tex.App.—Corpus Christi 1987), *writ denied*, 745 S.W.2d 320 (Tex.1988) and *Burlington Northern Railroad Co. v. Harvey*, 717 S.W.2d 371 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.), both courts determined that Section 15.034 was permis-

---

1. Section 15.034 of the Texas Practice and Remedies Code was repealed by the 70th Texas Legislature, effective September 2, 1987 (shortly after the trial of this case).

sive. These opinions discuss in detail the legislative history and the bases for concluding the section to be permissive. We adopt the reasoning and references in those opinions and find Section 15.034 to be permissive.

Next, KCS contends that the trial court erred in not changing venue even if Section 15.036 was applicable, because Carter failed to prove that KCS extended or operated in Harrison County as required by that section.[2]

 KCS filed a motion to transfer venue, supported by affidavits from the vice-president of personnel for KCS, the assistant controller for KCS, the tax commissioner of KCS, and superintendents for KCS and Louisiana & Arkansas Railway (L & A Railway). The affiants specifically deny that KCS railroad extends or operates through or into Harrison County, that KCS has an agent in Harrison County, and that KCS exercises, supervises, directs, or controls any of the train operating personnel of L & A Railway, which does operate in Harrison County.

Carter filed a response supported by sworn exhibits showing that KCS admitted in answer to request for admissions that some of its engines passed over railroad tracks located in Harrison County.

The response is also supported by affidavits sworn to by Franklin Jones, Jr. and Ronald Snider. The affiants swore personal knowledge of matters in other lawsuits involving KCS. Carter attempts to show that in a case styled *Tommy Hicks, Jr. v. Kansas City Southern Railway Company*, KCS entered into a compromise settlement and indemnity agreement reciting that a "train owned and operated by the

Defendant, Kansas City Southern Railway Company, ran into a railroad car which Plaintiff occupied" and further that the accident in question occurred at the Whelan Woodyard between Marshall, Texas, and Shreveport, Louisiana, and that the ultimate destination of the train causing the accident was Greenville, Texas.

KCS correctly states that Rule 408 of the Texas Rules of Civil Evidence prohibits the admission of evidence of compromise and offers to compromise. This rule provides an exception when the evidence is offered for another purpose, such as proving bias or prejudice or interest of a witness or party. These exceptions existed in case law prior to the adoption of the Texas Rules of Civil Evidence. This exception is for impeachment purposes to show a motive for the testimony offered. *Robertson Tank Lines v. Watson*, 491 S.W.2d 706 (Tex.Civ.App.—Beaumont 1973, writ ref'd n.r.e.). The evidence was not offered for impeachment purposes in the present case.

Carter takes the position that he is not seeking to show that KCS was liable in the prior suit, but only to show that KCS owned and operated the train involved in that suit. The ownership and operation of the train were essential elements in determining liability, and the compromise settlement agreement could not be used for that purpose. Therefore, the trial court should have excluded this document from its consideration.

Next, Ronald Snider's affidavit shows that he had received correspondence and a check from the general claims manager of KCS acknowledging liability and paying for damages caused by KCS to Haughton Timber Company which occurred in Harrison

---

2. Tex.Civ.Prac. & Rem.Code § 15.036 states:

 A suit against a railroad corporation or against any assignee, trustee, or receiver operating its railway may also be brought in any county through or into which the railroad of the corporation extends or is operated. A suit against a receiver of a person or a corporation may also be brought as otherwise provided by law.

 Section 15.036 was amended by Acts 1987, 70th Leg., 1st C.S., ch. 4, § 1, effective September 2, 1987. (This case was tried in July of 1987.) The language that a suit against a railroad corporation can be brought in a county in which the railroad "extends or is operated" has been deleted. It now reads:

 For the purposes of this section, the mere ownership, leasing of tracks, roadbeds, or right-of-way or maintenance or repair of tracks is not considered to constitute an agency or representative of a railroad corporation, and employees, excluding management, solely engaged in general maintenance, switching, loading or unloading or operating trains in transit shall not be considered agents or representatives of a railroad corporation.

County. Again, to determine admissibility, we must determine the applicability of Rule 408 of the Texas Rules of Civil Evidence in regard to compromise and offers to compromise. The specific language of the rule requires that there be a compromise or an attempt to compromise a claim *which was disputed* as to either validity or amount. We shall not quote all of the relevant correspondence, but the following is an excerpt from a letter signed by Mike Thibodeaux, Claim Agent, on The Kansas City Southern Railway Company stationery:

> From our conversation of today, please let this letter serve as notice that The Kansas City Southern Railroad Company has agreed to reimburse The Haughton Timber Company for the loss of a Hyster Challenger H225H Pulpwood Special.
>
> . . . .
>
> The Kansas City Southern Railroad Company regrets this most unfortunate accident and wishes to see that the Haughton Timber Company recovers its losses.

A later letter from Paul Gardner, General Claim Agent contains a paragraph stating:

> This agreement letter along with all work performed and payments made to Haughton Timber Company does not constitute admission of liability by the Kansas City Southern Railway Company, and should not be construed as such, in respect to all claims made by any party for the derailment on November 16, 1983.

The evidence is such that the trial judge could have concluded that the claim was not disputed as to validity or amount, and thus was not excludable under Rule 408. *See, Robertson Tank Lines v. Watson,* 491 S.W.2d at 709.

■ KCS correctly contends that Rule 87(3) of the Texas Rules of Civil Procedure requires that affidavits be made on personal knowledge setting forth facts that would be admissible in evidence. KCS objected at the trial on the basis that Ronald Snider had no personal knowledge because the letters were not to or from Snider. Snider swore in his affidavit that he was the sole shareholder and president of Haughton Timber Company and that he had personal knowledge of all the facts set forth in the affidavit which included references to the correspondence, letter agreements, and checks issued to Haughton Timber Company regarding reimbursement for the train accident at the Whelan Woodyard. This was sufficient to show personal knowledge.

Next, according to the affidavit of Jones, KCS's attorney stipulated in a case styled *Benny K. Chaffin v. Kansas City Southern Railroad* that KCS was the employer of Benny Chaffin. According to the affidavit of Jones, Chaffin was working on a line of tracks which ran from Shreveport, Louisiana, to Greenville, Texas, and which passed through Harrison County. This stipulation from another lawsuit is admissible as an admission by a party-opponent under Rule 801(e)(2)(D) of the Texas Rules of Civil Evidence.

In accordance with Rule 87(2) of the Texas Rules of Civil Procedure, Carter, as plaintiff, had the burden of proof to maintain venue in the county of suit. When a venue fact is specifically denied, the party pleading the venue fact must make prima facie proof of that venue fact by means of affidavits and other duly proved attachments to the affidavits. Tex.R.Civ.P. 87(3).[3] Rule 87(3)(a) provides that prima facie proof is made "when the venue facts

---

**3.** Prior to the 1983 revision, the language requiring only prima facie proof did not appear in the venue statutes or the rules relating to venue. The Texas Supreme Court discussed the burden of proof required to overcome a plea of privilege in *Banks v. Collins,* 152 Tex. 265, 257 S.W.2d 97 (1953). In *Collins,* the Supreme Court specifically refuted the contention that a prima facie proof was all that was required at a plea of privilege hearing in spite of some decisions by the courts of civil appeals to the contrary. (There are a number of court of appeals

cases under the plea of privilege practice which used the prima facie terminology, e.g., *Harber v. Switzer,* 403 S.W.2d 843 (Tex.Civ.App.–Amarillo 1966, no writ); *Panhandle Steel Buildings, Inc. v. Benson,* 385 S.W.2d 740 (Tex.Civ.App.–Amarillo 1964, no writ). The Court in *Collins* cited *Compton v. Elliott,* 126 Tex. 232, 88 S.W.2d 91 (1935), for the proposition that the "plaintiff must prove the facts in the usual way [in a plea of privilege hearing], which means that the defendant is to be permitted by his evidence to dispute and contradict the plaintiff's evidence."

are properly pleaded and an affidavit, and any duly proved attachments to the affidavit, are filed fully and specifically setting forth the facts supporting such pleading." Pursuant to Rule 87(3)(c), the trial court was required to consider only the affidavits offered by Carter to determine if prima facie proof had been made, and if so, the trial court was required by that section not to transfer the case. This would seem inconsistent with Rule 87(3)(b), which requires that the trial court is to determine the motion to transfer venue on the basis of the pleadings, any stipulations made by and between the parties, and such affidavits and attachments as may be filed by the parties. However, the party seeking the change of venue must also file affidavits establishing prima facie proof that the county to which transfer is sought is the county of proper venue. This would explain the need for all parties to file affidavits.

■ A problem in the present venue procedure is that Section 15.064 of the Civil Practice and Remedies Code provides that the appellate court shall consider the entire record, including the trial on the merits, to determine whether venue was proper. Thus, it appears that the trial court only looks at the affidavits to determine if prima facie proof has been made, while the court reviewing the trial court's action is to consider the entire record. This is the only situation in which a Texas appellate court is required to review a matter which the trial court had no opportunity to act upon. We feel strongly that this procedure, which is unfair to the trial court, should be changed.

KCS contends that if it is not allowed to rebut the presumption created by Carter's prima facie proof, then it is denied due process under the Fourteenth Amendment to the United States Constitution and equal rights under Article I, Section 3 of the Texas Constitution. In spite of Texas Rules of Civil Procedure 87, the trial judge at the time of the hearing announced that he was considering the KCS affidavits. On appeal, pursuant to the statute, we shall consider the entire record before us. KCS

has not pointed to anything in the trial on the merits that would affect the change of venue issue. Furthermore, we cannot consider the constitutional challenge because that issue was not brought before the trial court. *City of San Antonio v. Schautteet,* 706 S.W.2d 103 (Tex.1986).

■ We have considered the entire record, and we have determined that there is sufficient proof (excluding consideration of the compromise and settlement agreement in the *Hicks* case) for the trial court to have found that venue was proper in Harrison County.

■ KCS further contends that the award of $394,457.80 to Carter for future damages was excessive. The trial court did not apportion what amount was for pain, suffering, mental anguish, and future loss of earnings, although KCS did request this breakdown. KCS does not complain on appeal about the compensation for Carter's past damages.

■ In our review of a request for remittitur, the proper standard is factual sufficiency. We examine all of the evidence in the record to determine whether sufficient evidence supports the damage award, remitting only if some portion is so factually insufficient or so against the great weight and preponderance of the evidence as to be manifestly unjust. *Pope v. Moore,* 711 S.W.2d 622 (Tex.1986).

■ The trial court made a finding that Carter's earning capacity had been greatly diminished. There was sufficient evidence of Carter's future pain and inability to hold the type of jobs for which he is qualified to support this factual finding. In determining the amount of damages sustained by diminished earning capacity, consideration may be given to the injured party's age and health at the time of the injury, and to his education or want of education when he has been engaged in manual labor and is incapacitated from doing that type of work. *Texas & Pacific Railway Co. v. Crockett,* 298 S.W. 654 (Tex.Civ.App.–Eastland 1927, writ ref'd). Past earning capacity and life expectancy may be considered in determining the loss

of earning capacity. *Green v. Rudsenske,* 320 S.W.2d 228 (Tex.Civ.App.–San Antonio 1959, no writ).

The evidence indicated that Carter was fifty-seven years of age at the time of the trial and had a life expectancy of twenty-five years. He was diagnosed as having a bulging lumbar disc. The treating doctor testified that Carter had reached his maximum improvement and was not a candidate for surgery. Carter testified that he was unable to perform the work for which he was qualified and that he was unable to return to his former occupation where he earned approximately $37,700 a year in wages and benefits. Carter's doctor confirmed that Carter could not return to his former occupation, that he cannot perform any type of manual labor, and that his condition is painful. Carter testified that the injury had required him to take early retirement and that because he had retired early, his retirement income had been reduced by $329 a month. Calculated from age sixty-five to the remainder of his life expectancy, Carter has lost $329 per month for eighteen years, or a total of 216 months. Thus, his total loss of retirement income is $71,064.

Measuring Carter's loss of earnings and fringe benefits from his employment with KCS from the time of trial until he would reach the age of sixty-five, his loss is $263,-900. Although the evidence of past earnings does not establish a fixed measure of future damages, it is cogent evidence of the amount of damages to the earning capacity resulting from the injury. Assuming the trial court used the loss of earnings and fringe benefits to establish a range of damages for lost earning capacity, then the approximate amount remaining for compensation for future pain and suffering and mental anguish would be slightly less than $60,000. KCS correctly contends that Carter testified that he was sleeping well, that he had traveled to Germany, that he had had no surgery, that he had had no broken bones, that he was not admitted to the hospital following the accident, and that the only pain medication he is taking is Anacin, which can be bought over the counter at the drug store. Carter also testified that he has constant pain which keeps him edgy and irritable; that car trips hurt his back so much that he has to lie down and allow his wife to drive; that he cannot enjoy many of the physical activities that he enjoyed prior to the accident; that his back brace causes him itching and rashes during the summer; that he feels frustration because of his inability to help his wife perform heavy tasks that she did not have to do before the injury; that he cannot horseback ride, swim, visit amusement parks, zoos or fairs; and that he cannot enjoy his grandchildren as he did before the injury. His doctor confirms that Carter's condition is painful and that he has reached maximum improvement. We cannot determine with certainty what amount of the damage award was for loss of future earning capacity and what amounts were for future pain and suffering and future mental anguish, but there was sufficient evidence to support the future damage award found by the trial court.

The judgment of the trial court is affirmed.