**AUTOMOBILE INSURANCE COMPANY OF HARTFORD CONNECTICUT,**
Appellant,

v.

**David DAVILA and Donna Davila, Appellees.**

No. 13–89–239–CV.

Court of Appeals of Texas,
Corpus Christi.

Feb. 28, 1991.

Rehearing Overruled March 28, 1991.

George C. Brin, San Antonio, Frank E. Weathered, Corpus Christi, for appellant.

Ramon Garcia, Catherine W. Smith, Edinburg, for appellees.

Before DORSEY, SEERDEN and BENAVIDES, JJ.

## OPINION

DORSEY, Justice.

Automobile Insurance Company of North America, A Division of Aetna Life & Casualty (Aetna) appeals a jury verdict and trial court judgment awarding David and Donna Davila contractual and extracontractual damages for a wrongful denial of insurance benefits following a fire loss. By ten points of error, Aetna challenges the factual and legal sufficiency of the evidence to support the jury's verdict regarding good faith and fair dealing and deceptive trade practices, the admission and exclusion of evidence, and the jury charge. We reform the judgment of the trial court and, as reformed, affirm.

A portion of the Davilas' house burned in November, 1985. The police were at the house at the time the fire was discovered; the firemen arrived shortly thereafter. The Davilas made a damage claim against their insurance, which was held by Aetna. Aetna had its agent, Benny Triplett, and an independent investigator, Buddy Lavastida, review the fire scene and interview those persons present at the fire and had its attorney depose David and Donna. After considering the investigators' reports and the police and fire reports, on April 2, 1986, Aetna denied the claim on the basis that David had set the fire. The Davilas initiated a lawsuit seeking damages for unfair claims settlement. They brought suit for breach of contract, breach of the duty of good faith and fair dealing and violation of the Deceptive Trade Practices–Consumer Protection Act (DTPA). Tex.Bus. & Comm. Code Ann. § 17.41 et seq. (Vernon 1987). The Davilas contended that Aetna had no reasonable basis for denying their claim and that Aetna failed to adequately investigate their claim. They also contended that Aetna had engaged in false, misleading, and deceptive acts and practices. A jury found for the Davilas on all counts and the trial court entered judgment based on the jury verdict, awarding the Davilas $333,008.22. Aetna does not appeal the jury findings regarding breach of contract. Aetna raises ten points of error related to the jury findings and evidence concerning the Davilas' DTPA and breach of good faith and fair dealing causes of action. We first address the points related to the DTPA.

## DTPA

Jury questions seven through twelve, fifteen and sixteen relate to the Davilas' DTPA cause of action. By its tenth point of error, Aetna contends that none of these questions should have been submitted to the jury because the Davilas failed to plead and prove that proper and adequate notice was sent to Aetna in a timely manner pursuant to the DTPA. By points of error one and two, Aetna contends that the evidence is factually and legally insufficient to support the jury's answers to the jury questions.

We first address the question of notice so as to justify the submission of questions twelve, fifteen and sixteen. Section 17.-505(a) of the DTPA provides that as a prerequisite to filing suit under the DTPA against any person, the consumer shall give written notice to the person at least thirty days before filing the suit. Tex.Bus. & Comm.Code Ann. § 17.505(a) (Vernon 1987).[1] This notice must advise the person of the consumer's specific complaint and

---

1. The Davilas' cause of action accrued and their suit was filed before September 1, 1989, the date that the amended version of 17.505(a) became effective. The amended version of the act provided for sixty days notice.

the amount of actual damages and expenses, including attorney's fees, if any, reasonably incurred by the consumer in asserting the claim against the defendant. *Id.*

■■■ A DTPA plaintiff must plead notice. *See Investors, Inc. v. Hadley,* 738 S.W.2d 737, 741 (Tex.App.—Austin 1987, writ denied). When a DTPA defendant specifically denies notice, the plaintiff must prove that notice was given. *See Id.; accord HOW Ins. v. Patriot Fin. Serv. of Texas Inc.,* 786 S.W.2d 533, 538 (Tex.App. —Austin 1990, no writ). However, when an answer to a DTPA suit asserts that the plaintiff failed to comply with the DTPA notice requirement and some evidence regarding notice is admitted at trial without objection and no question regarding notice is submitted to the jury, notice will be deemed pursuant to Tex.R.Civ.P. 279 in accordance with the judgment. *Cielo Dorado Dev., Inc. v. Certainteed Corp.,* 744 S.W.2d 10, 10–11 (Tex.1988).

■■■ The Davilas' live trial pleading does not allege that any notice was provided to Aetna pursuant to the DTPA. Aetna specifically denied that it received any such notice. No issue on notice was submitted to the jury. Aetna did not object to the omission of an issue on notice in the charge. The transcript contains Aetna's requested issue regarding notice but there is no evidence in the record that this issue was presented to the trial court and that the trial court ruled on it. Hence, there is no evidence that the issue regarding notice was actually requested by Aetna. We have reviewed the record to determine whether there is sufficient evidence to support a deemed finding of notice and have determined that there is no evidence that the Davilas gave written notice to Aetna as required under the DTPA. Since there is

no evidence to support a finding of notice, it will not be deemed found in such a manner to support the judgment. *See Cielo,* 744 S.W.2d at 11. Accordingly, we conclude that the Davila's failure to plead and prove the required DTPA notice is reversible error; therefore, the trial court erred in submitting the jury questions regarding the DTPA. We sustain Aetna's tenth point of error.

■■■ After reviewing the relevant authorities, we conclude that normally, the appropriate remedy would be to remand the case for a new trial on the DTPA cause of action with instructions to the trial court to abate the suit to allow the plaintiffs to comply with the notice requirement.[2] *See HOW* at 538; *accord Certainteed Corp. v. Cielo Dorado Dev., Inc.,* 733 S.W.2d 247 (Tex.App.—El Paso 1987), rev'd on other grounds, 744 S.W.2d 10 (1988). When, however, a party tries a case on alternative theories of recovery, and the jury returns favorable findings on both theories, the party is entitled to judgment on the theory entitling him to the greatest recovery. *Boyce Iron Works v. S.W. Bell Tel.,* 747 S.W.2d 785, 787 (Tex.1988); *Birchfield v. Texarkana Mem. Hosp.,* 747 S.W.2d 361, 367 (Tex.1987). In this case, although the Davilas brought suit on alternative theories of DTPA violations and breach of good faith and fair dealing, they did not plead for treble damages under the DTPA. Therefore, their recovery under either the DTPA or breach of good faith and fair dealing would have been the same. The Davilas recognized this: only one question regarding actual damages was submitted to the jury and answering this question was conditioned on finding either a breach of good faith and fair dealing or a violation of the DTPA.

**2.** In *Jim Walter Homes, Inc. v. Geffert,* 614 S.W.2d 843, 845 (Tex.Civ.App.—Corpus Christi 1981, writ ref'd n.r.e.), this court held that a plaintiff who did not comply with the notice requirements of the DTPA could recover actual damages but could not recover treble damages. At that time, the DTPA notice requirement was a prerequisite only for the recovery of treble damages. Tex.Bus. & Comm.Code Ann. § 17.50A(2) (1977). The 1979 amendment eliminated the limited effect of prefiling notice, making notice a prerequisite to filing suit. Therefore, since at the time *Geffert* was decided, the DTPA notice requirement related only to the recovery of treble damages and was not a prerequisite to filing suit, we will not follow it as it relates to recovery of damages under the DTPA.

When there are favorable jury findings on an alternative theory, a judgment can be upheld on that alternative theory once a DTPA theory is reversed on appeal. *See Boyce Iron Works*, 747 S.W.2d at 786–87. In this case, as discussed below, the judgment can be upheld on the jury findings regarding breach of good faith and fair dealing. Since, in this case, the judgment can be upheld by the jury findings regarding a breach of good faith and fair dealing and the measure of damages are the same under either cause of action, remand of the DTPA cause of action is not warranted.

Aetna's points of error one and two challenge the sufficiency of the evidence to support the jury findings regarding the Davilas' DTPA cause of action. Because we have held the DTPA issues should not have been submitted to the jury, these evidentiary points are moot. We decline to address them.

## GOOD FAITH AND FAIR DEALING

The existence of a duty on the part of insurers to deal fairly and in good faith with their insureds was first stated in *Arnold v. Nat. County Mut. Fire Ins. Co.* 725 S.W.2d 165, 167 (Tex.1987). This duty is based on the special relationship which exists between an insurance company and its insured pursuant to a contract for insurance. *Arnold*, 725 S.W.2d at 167. The "special relationship" between the insured and insurer imposes a duty to investigate claims thoroughly and in good faith, and to deny those claims only after an investigation reveals there is a reasonable basis to do so. *Viles v. Sec. Nat. Ins. Co.*, 788 S.W.2d 566, 568 (Tex.1990). In this special relationship, an insurance carrier is held to that degree of care and diligence which a man of ordinary care and prudence would exercise in the management of his own business. *Arnold*, 725 S.W.2d at 167; *G.A. Stowers Furniture Co. v. American Indem. Co.*, 15 S.W.2d 544, 548 (Tex. Comm'n App.1929, holding approved).

A cause of action for breach of good faith and fair dealing is stated when it is alleged that there is no reasonable basis for denial of a claim or delay in payment or a failure on the part of the insurer to determine whether there is any reasonable basis for the denial or delay. *Arnold*, 725 S.W.2d at 167; *see also Underwriters Life Ins. Co. v. Cobb*, 746 S.W.2d 810, 814 (Tex.App.—Corpus Christi 1988, no writ). Whether there is a reasonable basis for denial must be judged by the facts before the insurer at the time the claim was denied. *Viles*, 788 S.W.2d at 567.

Aetna raises four points of error related to its cause of action for breach of good faith and fair dealing, three of which challenge the sufficiency of the evidence to support the jury findings regarding the elements of the cause of action and the award of damages. Also, Aetna challenges the propriety of the jury instruction regarding good faith and fair dealing, contending that an incorrect definition of the duty of good faith and fair dealing was submitted and that a correct definition was refused.

Appellant complains by its ninth point of error that the trial court erred in submitting to the jury an incorrect definition of the duty of good faith and fair dealing. The trial court gave the following instruction to the jury:

There is a duty on the part of an insurance company to deal fairly and in good faith with those persons whom it insures. You are further instructed that, in order for the conduct of an insurance company in denying or delaying payment of a claim to constitute a failure to exercise good faith, it must be shown that the insurer had no reasonable basis for denying the claim or delaying payment or the insurer failed to determine whether there was any reasonable basis for the delay.

Aetna tendered the following instruction which was denied by the court:

You are instructed that there is a duty on the part of an insurance company to deal fairly and in good faith with those persons whom it insures. You are further instructed that, in order for the conduct of the insurance company in denying or delaying payment of a claim to constitute a failure to exercise good

faith, it must be shown that the insurer denied or delayed payment of the claim at a time when it knew it had no reasonable basis for denying the claim or delaying the payment of the claim or the insurer failed to determine whether there was any reasonable basis for delay.

The essential difference between the instructions is that the requested instruction informs the jury that the insurer must have knowledge that it had no reasonable basis for denying the claim. Aetna claims that by failing to include language informing the jury that it was only liable if the claim was denied or delayed when it knew or should have known it had no reasonable basis for the denial, Aetna was deprived of it right to fair submission of the issues.

The trial court has discretion in submitting instructions to the jury. *Louisiana & Arkansas Ry. Co. v. Blakely*, 773 S.W.2d 595, 598 (Tex.App.—Texarkana 1989, writ denied). The question on review is whether the instruction was proper. Tex.R.Civ.P. 277. An instruction is proper if it finds support in the evidence and is of some assistance to the jury in answering the question submitted. *Blakely*, 773 S.W.2d at 598.

The Supreme Court has set forth a two part test for the violation of the duty of good faith and fair dealing. *Aranda v. Ins. Co. of N. Am.*, 748 S.W.2d 210, 213 (Tex.1988). An insured who asserts that his insurer has breached the duty of good faith and fair dealing must establish (1) the absence of a reasonable basis for denying or delaying of payment of policy benefits and (2) that the insurer knew or should have known that there was no reasonable basis for denying the claim or delaying payment. *Id.* This test requires both an objective determination of whether a reasonable insurer under similar circumstances would have denied the claimant's benefits and whether the carrier knew or should have known that there was no reasonable basis to deny the claim. In explaining the second element, the Supreme Court stated: "This element will be met by establishing that the carrier actually knew there was no reasonable basis to deny the

claim or delay payment, *or by establishing that the carrier, based on its duty to investigate, should have known that there was no reasonable basis for denial or delay." Id.* (emphasis added).

The instruction given tracks exactly the cause of action set forth in *Arnold*. The instruction tendered tracked the language set forth in *Aranda*. Both are correct statements of the law, but *Aranda* more specifically defines the elements of the cause of action for breach of good faith and fair dealing. While the requested instruction more definitely defines the elements to be proven, the trial court did not err in instructing the jury as it did.

The actions of the defendant that were evidence of the breach of the duty of good faith were the company's failure to investigate beyond Mrs. Davila's initial accusation of arson against her husband. The jury was instructed that bad faith would include the failure of the insurer to determine whether there was a reasonable basis for denying the claim. The failure to investigate relates to what the insurer "should have known" about the reasonableness of its denial if it fulfilled its duty to investigate. Although the instruction is not a model approved by this Court, we hold the instruction given was not improper.

Even if the trial court's failure to submit the requested instruction was error, we still must review the record as a whole as well as the entire charge to determine if it was reversible. *See St. Louis S. Ry. Co. v. Marks*, 749 S.W.2d 911, 915 (Tex.App.—Texarkana 1988, writ denied). The cause of action for breach of good faith and fair dealing requires either knowledge that it had no reasonable basis for denial *or* the failure to determine whether there was reasonable basis for denial or delay. Appellant's failure to investigate was submitted to the jury by the included instruction. The tendered instruction was the same with regard to whether Aetna failed to determine whether there was reasonable basis for delay.

Here, the cause of action focused upon both aspects of the cause of action.

There was sufficient evidence for the jury to have found that Aetna breached its duty of good faith and fair dealing by failing to determine whether there was a reasonable basis for denial. Even if the court should have given the tendered instruction, any error on the part of the trial court was not reversible because the jury could reasonably have concluded from the evidence that Aetna breached its duty by failing to investigate. This portion of the cause of action unquestionably was properly presented to the jury. We overrule appellant's ninth point of error.

By point of error three, Aetna contends that the evidence is factually and legally insufficient to support the jury findings to questions thirteen and fourteen which inquired: "Did Aetna breach its duty of good faith and fair dealing in handling the claim of David [or Donna] Davila, and if so, was such breach a proximate cause of any damages to [each]."

In determining the legal and factual sufficiency of the evidence, we will follow the well-established tests set forth in *Pool v. Ford Motor Co.*, 715 S.W.2d 629 (Tex. 1986); *Dyson v. Olin Corp.*, 692 S.W.2d 456 (Tex.1985); *Glover v. Texas Gen. Indem. Co.*, 619 S.W.2d 400 (Tex.1981); *Garza v. Alviar*, 395 S.W.2d 821 (Tex. 1965); *Allied Fin. Co. v. Garza*, 626 S.W.2d 120 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.); and Calvert, *No Evidence and Insufficient Evidence Points of Error*, 38 Texas L.Rev.

In reviewing an attack on the legal sufficiency of the evidence or a "no evidence" point, we consider only the evidence and reasonable inferences that tend to support the jury findings, and disregard all evidence and inferences to the contrary. *Best v. Ryan Auto Group, Inc.*, 786 S.W.2d 670, 671 (Tex.1990); *Responsive Terminal Sys., Inc. v. Boy Scouts of Am.*, 774 S.W.2d 666, 668 (Tex.1989). If there is any evidence of probative force to support the finding, the point must be overruled and the finding upheld. *Southern States Transp., Inc. v. State*, 774 S.W.2d 639, 640 (Tex.1989).

In reviewing an attack on the factual sufficiency of the evidence, we consider, weigh, and examine all of the evidence which supports and which is contrary to the jury's determination. *Plas–Tex, Inc. v. United States Steel Corp.*, 772 S.W.2d 442, 445 (Tex.1989). Having done so, this court should set aside the verdict only if the evidence standing alone is too weak to support the finding, or the answer is so against the overwhelming weight of the evidence that it is manifestly unjust and clearly wrong. *Garza*, 395 S.W.2d at 823; *In re King's Estate*, 150 Tex. 662, 664–65, 244 S.W.2d 660, 661 (Tex.1951). In this regard, *Pool* requires a court of appeals to detail the relevant evidence in its opinion and state how the decision is so against the great weight and preponderance of the evidence as to be manifestly unjust and in what regard the contrary evidence greatly outweighs the evidence in support of the verdict. *Pool*, 715 S.W.2d at 635.

Aetna argues that it had a reasonable basis for denying the Davilas' claim, which was because David started the fire. There are two means by which the duty of good faith and fair dealing could have been breached: that Aetna had no reasonable basis for denying the claim or that it failed to determine if there was a reasonable basis for denial.

The evidence supporting the jury's finding that Aetna's denial was not reasonable because of their belief that David started the fire is as follows. The fire originated in the upstairs master bedroom in a closet with a common wall with the bathroom, there was wiring in that wall associated with a whirlpool motor in the bathroom, and the most intense charring from the fire was in that wall in the area of the wiring. The evidence also showed David arrived at the house five to ten minutes before Donna arrived with her son John and his friend Joe. Immediately before the discovery of the fire, Donna, David, and John were in the master bedroom and Donna alone was removing clothes from the closet. During this time, David and Donna were fighting and David called the police to remove John and Joe, who was downstairs. Once Police Officer Rios arrived, David went down-

stairs to let him in, leaving Donna and John alone upstairs. David and Officer Rios went upstairs, and then back downstairs to escort Joe out of the house. While David and Officer Rios were downstairs and after they had let Joe out of the house, Donna and John discovered the fire and started yelling.

David and Officer Rios ran upstairs. They saw a fire, which John was attempting to extinguish, in the closet and heard Donna yelling that David was burning her clothes. David called out the window to another police officer to call the fire department. From the initial attempts to extinguish the fire until the fire department arrived, Donna and David accused each other of setting the fire. No one knew how the fire started and no one admitted to starting the fire or seeing someone else start it. From these facts, the jury could have inferred that it would have been virtually impossible for David to have set the fire.

Further, in order to infer that David set the fire, one would have to go against common sense and believe that David called the police to witness the fire and that he somehow managed to set the fire while the police were there without anyone seeing him do it. Also, one would have to believe that John stood by while David set fire to Donna's clothes and that David burned Donna's clothes, probably knowing that his own clothes and the house would be burnt in the process.

There is likewise, evidence tending to show that Aetna failed to determine whether it had a reasonable basis for denying the Davilas' claim. Although the whirlpool motor was adjacent to the closet wall with the most charring and the breaker box for the motor was on the closet wall with the most charring, none of the investigators asked whether the whirlpool had been used on the night of the fire. Lavastida, Aetna's independent investigator, ruled out the whirlpool motor and wiring because David never told him that it had been used. Jim West, Aetna's claims representative acknowledged that David did tell him that he had used the motor, but it was well after the

investigation and West did not do anything with the information. Also, despite the fact that the wiring was exposed in the closet and David repeatedly asked that the motor and the wiring be investigated, neither was ever investigated by an electrician.

Further, the evidence indicated that when Aetna began investigating the claim, they proceeded with the assumption that someone, probably David, set the fire. Triplett stated that "you always suspect arson." At the beginning of his investigation, Lavastida stated to Officer Rios that he just knew that someone set the fire but that he did not know who and that he could see that no one else did. The basis of the assumption was the counter-accusations of Donna and David regarding starting the fire. Aetna seized on the substance of the accusations and failed to look beyond them into the circumstances of the situation and recognize that the accusations could have been retaliatory or made in anger.

Additionally, Lavastida admitted that he was inconclusive regarding the cause of the fire and could not say what caused the fire to start. Nevertheless, he reported that the fire was "intentionally set by the application of open flame to contained clothing." Such is the evidence that leads to the conclusion that Aetna proceeded with a mind set that arson had occurred and, without thoroughly investigating other possible fire sources, concluded that David had set the closet on fire.

We find that there is some evidence that Aetna did not have a reasonable basis for denying the Davilas' claim and that there is some evidence that Aetna failed to determine whether there was any reasonable basis for denying the claim. Further, after a careful review of the record, we find that this evidence is sufficient to support the jury's findings that Aetna breached its duty of good faith and fair dealing. Accordingly, we overrule appellant's third point of error.

By its seventh point of error, Aetna contends that the evidence is legally and factually insufficient to support the jury's award of damages for past and future mental

anguish and past and future loss of credit standing. The jury awarded David and Donna each $20,000 as damages for mental anguish in the past, $20,000 for the future, and $20,000 each for loss of credit standing in the past and $20,000 for the loss of credit standing to be suffered in the future.

▬▬▬ Mental anguish consists of the emotional response of the plaintiff caused by the tortfeasor's conduct. *Birchfield v. Texarkana Mem. Hosp.*, 747 S.W.2d 361, 368 (Tex.1987). The term mental anguish implies a relatively high degree of mental pain and distress. *Teledyne Exploration Co. v. Klotz*, 694 S.W.2d 109, 112 (Tex.App. —Corpus Christi 1985, writ ref'd n.r.e.). It is more than mere disappointment, anger, resentment or embarrassment, although it may include all of these. *Id.* It includes a mental sensation of pain resulting from such painful emotions as grief, severe disappointment, indignation, wounded pride, shame, despair or public humiliation or a combination of any of these. *Id.* Here, the relevant inquiry is what mental anguish that resulted from the tortious denial of the claim that constituted the breach of the duty of good faith and fair dealing. The anguish suffered as a result of the fire before the tort was committed was not a result of Aetna's conduct and is not compensable for the breach of the duty of good faith and fair dealing.

There was no direct evidence of the Davilas' emotional states resulting from the breach of duty so as to constitute compensable mental anguish. Neither David nor Donna testified as to outrage or other emotional pain that they were angry or hurt or otherwise emotionally distressed as a result of the carrier's action. She filed for divorce two days after the fire and moved out of the damaged residence, planning to do so before the fire, but would live with David periodically in the house both before and after their divorce. The emotional distress found by the jury would have to be inferred from the unrepaired condition of the home, their shortage of clothes and furniture. There was little evidence concerning their living conditions.

The only evidence related to David and Donna's mental anguish in the past was circumstantial. It consisted of David's testimony that they had to live in the downstairs part of the house because it was not repaired upstairs. He also testified that the downstairs was damaged by smoke and water. Donna testified that she and David had to live in the house with mice, commenting that "it was really bad." She repeatedly complained that she and David were wearing the same clothes, stating at one time that even five months after the fire, she and David were "still without clothing—without anything." The Davilas lost the majority of their clothes and household furnishings to smoke and water damage. They repeatedly contacted Aetna's representatives to no avail; Donna called on a daily basis with resulting "tremendous" phone bills. There was an extended wait until Aetna denied the claim with the accusation that David committed arson by setting the house on fire.

Additionally, their testimony indicated that David and Donna were emotional people who overreacted to stress: David and Donna had frequent arguments to the extent that Donna filed three times for divorce; when Donna could not find her stereo system, she accused David of selling it before she remembered that she had moved it to another room; when David did not want Donna to take her clothes, she hit him with a shoe; immediately after the fire, David and Donna were shouting at each other and accusing each other of starting the fire; after the fire, they threw all their clothes out of the upstairs window onto the lawn; they returned furniture to the store from which they were purchasing it without determining whether it was usable or repairable—some of it was repairable or usable; Donna called the insurance adjuster daily for months.

There was also evidence which indicated that Donna and David would be likely to react with intense emotion to events. Days after the fire she was still very shaken. Donna also testified that David was an excitable person.

We find there is legally and factually sufficient circumstantial evidence from which the jury could infer that Aetna's acts or omissions caused mental anguish to the Davilas in the past. However there is no evidence that the tortious conduct of appellant would cause them mental anguish in the future.

Aetna challenges the $20,000 awarded to each David and Donna for the loss of credit standing in the past and the award of $20,000 each for loss of credit standing in the future. Loss of credit is recoverable as actual damages in a suit where the damage to credit was the necessary and usual result of the defendant's actions. *Mead v. Johnson Group, Inc.*, 615 S.W.2d 685, 688 (Tex.1981). The amount of damages must only be established with the degree of certainty to which it is susceptible. *Southwestern Bell Tel. Co. v. Sims*, 615 S.W.2d 858, 864 (Tex.Civ. App.—Houston [1st Dist.] 1981, no writ).

The only evidence as to any damage to either David's or Donna's credit standing concerns their dealings with Lack's Furniture Store. The Davilas bought over $10,000 worth of furniture from Lack's on credit approximately two months before the fire. The furniture was damaged by smoke or water as a result of the fire at the residence. The Davilas stopped making payments on the furniture after the fire because all of their savings and earnings went to the purchase of clothing and to make what repairs they could to the house in the absence of the insurance proceeds. After repeated calls and demands for payment by Lack's, the furniture was returned to Lack's for credit on the unpaid balance. There was no evidence of reports to a credit reporting service, a denial of credit to the couple, or any other result of the action by Lack's. Donna testified generally that their credit was "totally ruined", but there was nothing offered to support that conclusion.

We hold that such evidence constitutes no more than a scintilla that the Davilas suffered a loss of credit and no evidence of any monetary injury resulting from it. Accordingly, the evidence is legally insufficient to support the jury's finding that the Davilas suffered damages as a result of the loss of credit standing in the past and future.

That portion of appellant's seventh point of error challenging the sufficiency of the evidence to support the findings of the jury that Donna and David Davila suffered mental anguish in the past in the sum of $20,000 each as a result of Aetna's breach of its duty of good faith and dealing is overruled. Those portions of point seven challenging the legal sufficiency of the evidence to support the findings of mental anguish in the future and loss of credit standing in the past and future for both appellees are sustained.

By its fourth and eighth point of error, Aetna challenges the sufficiency of the evidence to support the jury findings of Aetna's conscious indifference to the rights of the Davilas and the $100,000 of exemplary damages awarded. An award of exemplary damages is proper when there is proof of conduct on the part of the tortfeasor that is well beyond that which justifies an affirmative finding of a breach of the duty of good faith and fair dealing. This Court has already recognized the difference between awarding damages pursuant to a breach of a duty to deal fairly under a contract and an award of punitive damages for the manner in which that duty was breached when we stated that a finding of a breach of good faith and fair dealing is not in itself sufficient to provide a basis for exemplary damages. *See National Fire Ins. v. Valero Energy*, 777 S.W.2d 501, 511 (Tex.App.—Corpus Christi 1989, writ denied). Exemplary damages are recoverable for a breach of the duty of good faith and fair dealing under the same principles allowing recovery of those damages in other tort actions. *Arnold*, 725 S.W.2d at 125; *Underwriters Life Ins. Co. v. Cobb*, 746 S.W.2d 810, 817 (Tex.App.—Corpus Christi 1988, no writ). In order to be entitled to exemplary damages, the injured party must show that the tortfeasor acted with conscious indifference to his rights. *Trenholm v. Ratcliff*, 646 S.W.2d 927, 933 (Tex.1983); *Cobb*, 746 S.W.2d at

817. In other words, the plaintiff must show such an entire want of care which would raise the belief that the act or omission complained of was the result of conscious indifference to the right or welfare of the person or persons affected by it. *Austin Ranch Enters., Inc. v. Wells,* 760 S.W.2d 703, 708 (Tex.App.—Fort Worth 1988, writ denied).

The purpose or intent of the defendant is determinative of his liability for exemplary damages. *Valero,* 777 S.W.2d at 511. The mere fact that an act is intentional or legally wrongful will not support an award of punitive damages; the act must be intentionally wrongful, or must be motivated by ill will and a desire to injure the other party. *Group Hosp. Servs., Inc. v. Daniel,* 704 S.W.2d 870, 875 (Tex.App.—Corpus Christi 1985, no writ); *see, e.g. Ferguson v. DRG/Colony N., Ltd.,* 764 S.W.2d 874, 885 (Tex.App.—Austin 1989, writ denied) (defendant never intended to repair roofs to make them water-tight). An unreasonable act will not support an award of exemplary damages. *Valero,* 777 S.W.2d at 511.

A statement regarding insurance coverage must be known by the speaker to be false and made intentionally in order to support a claim for exemplary damages. *See Daniel,* 704 S.W.2d at 875. For example, in *Cobb,* the plaintiffs proved that at the time the insurance company denied coverage, it had ample indications of misdealings by its agent with insureds in similar situations and did not go far enough in its investigation to uncover the wrongdoing by its agent, or chose to ignore that evidence. *Cobb,* 746 S.W.2d at 816–17. The denial of coverage was made after a cursory examination of medical records. *Cobb,* 746 S.W.2d at 816.

In *Daniel,* however, the insurance company initially verified coverage of certain medical treatments under the policy but later rejected the claims for reimbursement, contending that the treatments fell within one of the exclusions in the policy. *Daniel,* 704 S.W.2d at 874. At the time the insurance company made the first statement regarding coverage, it had reviewed the policy and had an honest belief in its interpretation of the contract coverage. *Id.* at 875. It was only later, after a second examination of the policy, that the insurance company denied coverage. *Id.* This court noted that when there is an honest difference of opinion as to the interpretation of the legal effect of a contract, the sincere pursuit of a claimed legal right under that contract by one of the parties cannot form the basis of an award of punitive damages. *Id.* at 875 (citing six cases in support of this proposition).

In this case, the Davilas contend that the processing and denial of their claim was wrongful and in conscious disregard of their rights, welfare and/or safety. They point to several acts by Triplett, West, Lavastida and Aetna's attorney and contend that these acts, either singly or together, constitute some evidence of gross negligence sufficient to support the jury finding. They allege that when Triplett attempted to get David to sign a non-waiver agreement that this indicated Aetna's predetermined mind set and intent to not give this case any objective treatment. They also contend that Aetna's attorney's later attempt to have David sign the agreement was unconscionable. The Davilas argue generally that Lavastida's trial testimony raised serious questions regarding whether he may have been instructed to go out and "nail" David. Further, they urged that West's unfamiliarity with his file indicated conduct inconsistent with diligence. Lastly, they contend that Triplett kept reassuring the Davilas that they would be paid soon and that they were never told of the suspicions regarding David until the claim was denied.

None of this is evidence that when Aetna denied the Davilas' claim it knew the denial was false nor does it show such a want of care to constitute a conscious indifference of the rights of the Davilas. The evidence is sufficient to support the jury's findings of a breach of the covenant of good faith and fair dealing; however, there is no evidence of such a lack of care, such a conscious indifference, necessary to support the award of exemplary damages. Accord-

ingly, we sustain Aetna's fourth and eighth points of error.

## EVIDENCE

Aetna raises two points of error regarding the admission and exclusion of evidence. By its fifth point of error, Aetna contends that the trial court erred in excluding certain evidence related to Aetna reopening Donna's claim after Aetna's initial denial. By its sixth point of error, Aetna contends that the trial court erred in admitting certain evidence related to Aetna's claims adjusting practice in other areas of South Texas.

■ Aetna's fifth point of error specifically challenges the trial court's exclusion of letters Aetna sent to Donna's attorney and the exclusion of West's testimony concerning the letters. On April 9, 1986, one week after Aetna's denial of Donna's claim on the basis that David committed arson, the Texas Supreme Court handed down a decision in which it held that illegal destruction of jointly owned property by one coinsured does not bar recovery under the policy by the innocent insured. *Kulubis v. Texas Farm Bureau Underwriters,* 706 S.W.2d 953, 955 (Tex.1986). Pursuant to *Kulubis,* Aetna reopened Donna's claim file.

At trial, Donna testified that Aetna "drug its feet" with regard to her claim. Aetna sought to introduce letters sent to Donna after *Kulubis* was handed down as evidence of Aetna's efforts to settle the claim in order to counter Donna's testimony. The Davilas' attorney objected to the admission of the letters on the basis of Rule 408 of the Texas Rules of Evidence which excludes any evidence of conduct of statements made in compromise negotiations of cases. Aetna argued that the letters were relevant to counter the general bad impression that Donna's testimony had left with regards to the manner Aetna treated its insureds. The trial court sustained the objection, excluding the letters. Aetna preserved the letters in a bill of exception.

Subsequently, when West testified, Aetna again attempted to introduce evidence of attempted settlement with Donna by asking West to read the letters sent to Donna from Aetna's attorney. The Davilas' attorney objected on the grounds of hearsay and Rule 408. Aetna argued that since they were accused of being in bad faith because they failed to settle the claim, that they were entitled to have the evidence admitted. The trial judge sustained the objection on both grounds.

On appeal, Aetna argues that the whole essence of Donna's case for extracontractual relief was that Aetna had " 'drug its feet' with no reasonable basis as part of a pattern of bad faith while Donna had been the picture of cooperation." Aetna contends that it offered the evidence for negativing a contention of undue delay. Donna's claim, as pled and presented, however, related to Aetna's actions with regard to her claim before the April 2, 1986, denial, and not to undue delay by Aetna after April 2, 1986.

■ Rule 408 prohibits the admission of evidence of compromise and offers to compromise. *Kansas City S. Ry. Co. v. Carter,* 778 S.W.2d 911, 913 (Tex.App.—Texarkana 1989, writ denied); Tex.R.Civ.E. 408. This rule provides an exception when the evidence is offered for another purpose, such as negating a contention of undue delay. *See Carter,* 778 S.W.2d at 913; *Adams v. Petrade Int'l, Inc.* 754 S.W.2d 696, 722 (Tex.App.—Houston [14th Dist.] 1988, writ denied). When the settlement evidence is immaterial to the main trial issue, refusing to admit the settlement evidence is not reversible error. *Turner v. Monsanto Co.,* 717 S.W.2d 378, 381 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.). Here, Aetna offered the evidence to counter allegations of delay. The delay about which Donna complained, however, occurred before the denial, and before Aetna reopened her file and began compromise negotiations. Therefore, the trial judge was correct in excluding the evidence. Moreover, even if the trial judge did err in excluding Aetna's exhibits and West's testimony, the record as a whole reveals that it was not reasonably calculated and probably did not cause the rendition of an improper

verdict. *See* Tex.R.App.P. 81(b)(1). We overrule Aetna's fifth point of error.

 By its sixth point of error, Aetna contends that the trial court erred in admitting into evidence the reference contained in Aetna's claim file regarding Duval County. On cross-examination of West, the Davilas' attorney stated to West "You were advised, you being Aetna Insurance Company, were advised that Raymondville is run much like the old Duval County...."[3] The reference to Duval County was contained in a memorandum contained in Aetna's file regarding the Davilas' claim and had been made by an adjuster who played no role whatsoever in any decision-making process concerning the Davilas' claim. Aetna's attorney objected due to a lack of relevance and contended that even if there was some relevance, the prejudicial value outweighed the probative effect of the evidence; he also objected on hearsay grounds.

The trial court overruled the objection, ruling that the statement was relevant to the state of mind of Aetna. Despite the trial court's ruling, the question was never answered by West or re-asked by the Davilas' attorney. On re-direct, however, Aetna's own attorney referred to the memo specifically and asked West whether he agreed that the political system in Willacy County was like that of Duval County. West stated that he would rather not comment because he did not know the political system in Willacy County and would not want to hazard a guess.

 An unanswered question, although improper and duly objected to, is not sufficient grounds for reversal. *Firestone Tire & Rubber Co. v. Rhodes*, 256 S.W.2d 448, 453 (Tex.Civ.App.—Austin 1953, writ ref'd n.r.e.). Generally, any error in the admission of testimony is deemed harmless if the objecting party subsequently permits the same of similar evidence to be introduced without objection. *Richardson v. Green*, 677 S.W.2d 497, 501 (Tex. 1984). In this case, the question to which Aetna objected was not answered nor re-

asked by the Davilas' attorney; Aetna was the party which subsequently elicited the objectionable testimony. We find no error on the part of the trial court. Accordingly, Aetna sixth point of error is overruled.

The judgment of the trial court is REFORMED to delete awards to appellees for exemplary damages in the amount of $100,-000, to delete awards to each appellee for mental anguish in the future, and to delete awards to each appellee for loss of credit standing in the past and in the future. As REFORMED, the JUDGMENT IS AFFIRMED.

BENAVIDES, Justice, dissenting.

I dissent from the majority's holding that finds the jury instruction on the bad faith claim proper and, if improper, not reversible error.

Error in a jury charge is reversible when, in light of all the circumstances, the denial of the complaining party's rights was reasonably calculated to cause and probably did cause the rendition of an improper judgment. *Island Recreational Dev. Corp. v. Republic of Texas Savings Assn.*, 710 S.W.2d 551, 555 (Tex.1986). A charge that gives an incorrect statement of applicable law is reversible error. *See Gulf Coast State Bank v. Emenhiser*, 562 S.W.2d 449, 453–54 (Tex.1978). When the trial court mis-defines the basic legal standard for a dispositive liability question, the error is likely to cause the rendition of an improper judgment. *See Bobbitt v. Weeks*, 774 S.W.2d 638, 639 (Tex.1989) (per curiam). Instructions must be tailored to fit the controversy. *See Brown v. American Transfer & Storage Co.*, 601 S.W.2d 931, 937 (Tex.1980). An instruction is improper if it misleads or confuses the jury. *See* Tex.R.Civ.P. 277.

First, unlike the majority, I believe that the jury instruction was in fact improper. In a cause of action for breach of the duty of good faith and fair dealing, the claimant has the burden to establish:

(1) the absence of a reasonable basis for the denial of a claim or the delay in

---

**3.** Duval County is legendary in South Texas for alleged political corruption.

payment of the benefits of the policy, *and*

(2) that the carrier:

 (a) actually knew there was not a reasonable basis for denial or delay, *or*

 (b) should have known, based upon its duty to investigate, that there was not a reasonable basis for the denial or delay.

*See Aranda v. Insurance Co. of North America,* 748 S.W.2d 210, 213 (Tex.1988). Regarding 2(a) and 2(b), whether there is a reasonable basis for denial is *judged by the facts before the insurer at the time the claim is denied. Viles v. Security Nat'l Ins. Co.,* 788 S.W.2d 566, 567 (Tex.1990).

The trial court tendered the following instruction to the jury:

it must be shown that the insurer had no reasonable basis for denying the claim or delaying payment or the insurer failed to determine whether there was any reasonable basis for the denial or the delay.

Aetna's tendered instruction follows (emphasis added):

it must be shown that the insurer *denied or delayed payment of the claim at a time when it knew it* had no reasonable basis for denying the claim or delaying the payment of the claim or the insurer failed to determine whether there was any reasonable basis for the denial or the delay.

The difference between the trial court's instruction and Aetna's instruction is underscored. The majority describes this difference in the following manner: "[t]he essential difference between the instructions is that the requested instruction informs the jury that the insurer must have knowledge that Aetna had no reasonable basis for denying the claim." By such a characterization, the majority falls short of the mark. Aetna's instruction *also* differs because it includes a requirement that the jury consider the insurer's denial *from the facts before the insurer at the time of the denial.*

As the *Viles* opinion recognizes, the insurer's reasonable basis must be viewed from the facts before it at the time of the denial. Otherwise, the carrier could be held liable for a bad faith denial any time the insured ultimately established a right to coverage. Because the evidence at trial showed a substantial difference between the information available at the time of the denial and the information available at the time of trial, the trial court erred in failing to include Aetna's instruction which would have limited the jury's review of the reasonable basis to the facts before the insurer at the time of the denial.

To circumvent the error in the trial court's charge, the majority finds sufficient evidence of the alternative theory, namely, that Aetna should have known that it had no reasonable basis for denial because it failed to properly investigate the claim. Thus, the majority holds that any error in the instruction was not reversible. I disagree.

In its recitation of the facts, the majority relies upon facts not known to Aetna at the time of the denial and concludes that the evidence was sufficient to show that Aetna should have investigated further. Here, we have an insurance carrier that based its denial upon (1) the report of a fire investigator, concluding that the fire was intentionally set; (2) the opinion of the fire chief that the fire was intentionally set; (3) the uncontradicted and admitted *statements of its own insured* made to several police officers and her son, indicating that the co-insured, her husband, had set the fire; and (4) the inconsistencies in the husband's statements.

Because the jury was not instructed to consider Aetna's knowledge that it had no reasonable basis for denial or delay and was not instructed to view the facts as they were available to Aetna at the time of the denial or delay, I believe it highly likely that the jury's finding of bad faith came about by reason of the Davilas' ultimately establishing at trial a right to coverage under the policy, not by Aetna's unreasonable denial or delay. Comparing the evidence presented at trial with the instruction in the charge, I would find that the error in the charge was reasonably calculated to cause and probably did cause the rendition of an improper judgment and

would sustain Aetna's ninth point of error. *See Island Recreational Dev. Corp.*, 710 S.W.2d at 555.

As previously detailed, Aetna had both an independent fire investigator's report and the knowledge of the statements made by its own insured, among other things, before it at the time of its denial which indicated that the fire was intentionally set. While conflicting facts on the arson issue might defeat Aetna's affirmative defense to the contract claim, those same facts in the context of the bad faith claim establish, as a matter of law, that Aetna had a reasonable basis for its denial of the claim. *See Fuentes v. Texas Employers' Ins. Ass'n*, 757 S.W.2d 31, 33 (Tex.App.—San Antonio 1988, no writ); *Yancy v. Floyd West & Co.*, 755 S.W.2d 914, 922 (Tex.App. —Fort Worth 1988, writ denied). Therefore, I would also sustain Aetna's point of error challenging the legal sufficiency of the evidence.

Accordingly, I would reverse the judgment on the breach of good faith and fair dealing claim and remand this cause for further proceedings on the Davilas' Deceptive Trade Practices Act claim. (See the majority's discussion of Aetna's tenth point of error.)