# 96-0120

**AFFIRMED in part, REVERSED in part, RENDERED in part, AND REMANDED. Opinion issued August 28, 1995.**

FILED
IN SUPREME COURT
OF TEXAS

JUL - 5 1996

JOHN T. ADAMS, Clerk
By_____ Deputy

In The
### Court of Appeals
### Fifth District of Texas at Dallas

---

No. 05-92-01354-CV

---

## STATE FARM LLOYD'S INSURANCE COMPANY, Appellant

## V.

## ASHBY AAA AUTOMOTIVE SUPPLY CO., INC. AND JOE BEN ASHBY, JR., INDIVIDUALLY, Appellees

---

**On Appeal from the 298th Judicial District Court
Dallas County, Texas
Trial Court Cause No. 89-13647-M**

---

## OPINION

Before Chief Justice Thomas[1] and Justices Ovard and Barber
Opinion By Justice Barber

Ashby AAA Auto Supply, Inc. (Ashby, Inc.) sued State Farm Lloyd's Insurance

Company (State Farm) alleging damages from fire loss under a policy issued by State Farm

---

[1] The Honorable Linda Thomas was on the original panel at the time this cause was submitted for decision. Justice Thomas was sworn in as Chief Justice on January 1, 1995.

We affirm in part and reverse and render in part. We overrule Ashby, Inc.'s cross-points of error. We remand this cause to the trial court for entry of judgment consistent with this opinion.

## BACKGROUND

Ashby was president, and the sole shareholder, of Ashby, Inc. State Farm insured Ashby, Inc. The policy covered Ashby, Inc.'s realty, the building's contents, and losses from business interruption.

In the early morning hours of June 27, 1989, a fire occurred at Ashby, Inc. The building and some of its contents were damaged in the fire. There was also an interruption in Ashby, Inc.'s business activities.

State Farm began its investigation the morning of the fire. Phil Maxey, the State Farm agent from whom Ashby, Inc. purchased the insurance policy, inspected the scene that morning. Todd Rutledge, a State Farm adjuster, and a fire damage expert inspected the building that afternoon. Rutledge instructed Ashby to make an inventory of the damage and not to move anything. Based on his observations at the scene, Rutledge formed the opinion that the fire had four points of origin.

Rutledge requested a fire report from the Addison Fire Department. Based on the Addison Fire Department's report, Rutledge called Fire and Loss Analysis, Inc. on June 28 and requested an analysis of the cause and origin of the fire. He also returned Ashby's call regarding business interruption loss. Rutledge informed Ashby that State Farm would need

Ashby, Inc.'s income tax returns for the last two or three years in order to begin adjusting the business interruption loss. Rutledge also ordered Ashby, Inc.'s credit report in order to determine if there were any liens against the property or the contents because the lienholders would also be insured by the policy.

On June 30, Fire and Loss Analysis, Inc. called Rutledge and told him that it had determined that the fire was intentionally set, that it would submit a report, and that samples had been sent to a lab.

Rutledge met with Ashby on July 5. He gave Ashby nonwaiver and blanket authorization forms to sign. Ashby brought six pages of inventory and gave them to Rutledge. Ashby advised Rutledge that he would check with his lawyer about the nonwaiver form and that he would set a time for State Farm to take his recorded statement the following week. During this meeting, Rutledge informed Ashby that the initial report indicated the fire had been intentionally set. Rutledge also told Ashby that State Farm could not proceed with the claim until the nonwaiver form was signed.

State Farm received Fire and Loss Analysis, Inc.'s report on July 7. The report concluded that the fire was intentionally set with gasoline at five different points of origin. Rutledge met with Ashby that day. Ashby signed the blanket authorization but said that he would have to talk with his attorney again about signing the nonwaiver form. Later that day, Ashby advised Rutledge that he had given Ashby, Inc.'s lawyer Rutledge's number. Rutledge called Ashby, Inc.'s lawyer. Ashby, Inc.'s lawyer would not allow Ashby to sign

the nonwaiver form.[2] Rutledge met with Ashby on July 10. He again told Ashby that because the nonwaiver form was not signed, a reservation of rights letter would have to be sent and this would result in delay. Rutledge gave the file to his supervisor to send a reservation of rights letter. Ashby, Inc.'s attorney called Rutledge and stated that he would advise Ashby not to sign the nonwaiver form. The attorney also threatened to file a bad-faith claim because of the delay.

Ashby went to State Farm's office on July 13 to give his statement. Ashby told Rutledge that he had not received the reservation of rights letter. Rutledge informed Ashby that State Farm could not proceed until Rutledge received the green card back (showing

---

[2] The nonwaiver form provided as follows:

Reason(s) for executing this request:

1) There is a question as to whether the cause and origin of the loss was accidental in nature.

2) It is questionable whether there has been a loss sustained by a peril insured against.

For the reasons stated above, STATE FARM LLOYDS COMPANY may have no obligation to defend or indemnify the undersigned for claims arising out of an accident or occurrence on or about 6/27/89 at or near 15201 Addison Rd.
      The undersigned request(s) and authorize(s) the Company to investigate, negotiate, settle, deny, or defend any claim arising out of such accident or occurrence as it deems expedient. Such action shall not waive any right the Company may have to deny any obligation under the policy contract, and shall not waive any rights of the undersigned.

Ashby did not execute the nonwaiver form. However, he did return it to State Farm with the following notation on the back:

Todd,

I am not signing this because, on advice of attorney, because (sic) it is not provided for in the policy. I will, of course, cooperate in every other way pursuant to the policy.

/s/ Joe Ben Ashby, Jr.
President
AAA Auto Supply, Inc.

delivery of the letter) from the reservation of rights letter. Ashby, Inc.'s lawyer again called complaining of the delay and recommending that State Farm pay the business interruption claim "or else."

Rutledge and his supervisor discussed paying Ashby, Inc. an advance. State Farm paid Ashby, Inc. a $2000 advance on July 14. Ashby advised State Farm that he had received the reservation of rights letter and made an appointment for his recorded statement to be taken on July 17.

On July 17, Ashby gave his recorded statement at State Farm's office. The next day, Ashby picked up proof of loss claim forms from State Farm. On July 20, Rutledge contacted an analyst to find out what documents he needed to determine the business interruption loss. The analyst told Rutledge that he needed tax returns, eighteen months of sales records, and the last physical inventory before the fire occurred.

Rutledge and Ashby talked on July 24. Ashby asked for another advance due to business interruption. Rutledge asked Ashby for more information and told him that State Farm had a list of questions that needed answers. Rutledge provided the list of questions to Ashby the next day. Rutledge also interviewed Ashby's neighbors and on July 25, searched the courthouse records for suits involving Ashby.

Ashby returned the questions, with answers, on August 1. He also told Rutledge that he would have a contractor out on August 3 to estimate the damage to the building. Rutledge told Ashby to advise him as to the estimate and that State Farm would have its

own estimate done.

On August 2, Rutledge requested information regarding Ashby, Inc.'s financial status from Chrysler and Addison Bank. He also requested a credit report on Ashby. Additionally, Rutledge contacted a law firm to discuss obtaining Ashby's statement under oath.

On August 3, Ashby advised Rutledge that Ashby, Inc.'s contractor would examine the property the next day. Rutledge contacted Southwest Business Investigators to arrange an appointment to discuss the file. Rutledge also met with his supervisor who instructed him to conduct a thorough review of courthouse records and check on Ashby's wife's business.

Rutledge went to the property on August 4 to inspect the building and its contents for damages. All of the contents were gone. According to Ashby, the contents of the building had been thrown away. State Farm asserted the contents were disposed of without its knowledge or consent. Ashby, Inc.'s contractor did not show up that day. Rutledge did not complete his estimate that day because he was uncertain whether the heating or electrical system had been damaged. Rutledge decided to wait until electricity was restored to the building before completing his estimate.

Ashby delivered a contractor's estimate of repair costs to State Farm on August 8. Rutledge told Ashby that the estimate was not satisfactory because it was a lump sum estimate as opposed to an itemized one. Ashby delivered a breakdown of repair expenses the following day. On August 11, the contractor completed a more detailed estimate;

however, State Farm did not think the estimate was sufficiently itemized. Rutledge's estimate of the damage to the building, excluding electricity, was $13,000. In contrast, the contractor estimated the damage to be $75,000.

On August 14, State Farm received Ashby, Inc.'s banking records. The records showed four overdrafts during the months of May and June.

On August 24, Rutledge and his supervisor met with Ashby. They advised Ashby that they needed a CPA to verify the statements of monthly expenses and income for the twelve months prior to the fire in order to adjust the business interruption loss. They also advised Ashby that the advances which had been made thus far were with respect to content losses. Ashby, Inc. received another advance that day.

With one exception discussed below, there was no adjusting activity between August 24 and early October. During this period of time, Rutledge was on emergency storm duty and vacation. On August 27, State Farm received an extensive report prepared by a third party investigation service. While the report suggested further areas to investigate, it concluded that "[a]s of this report no evidence exists from which to implicate the insured and/or a third party in the intentional setting of the fire event."

On October 3, State Farm's analyst called Rutledge and advised him that Ashby failed to show up for a meeting. Rutledge tried to contact Ashby twice on October 4, but was unsuccessful. Ashby called State Farm on October 5 and indicated that he wanted to meet on October 6.

On October 17, State Farm reviewed the file and determined that while the insured may have had the means and opportunity to set the fire, it could not find sufficient evidence of motive. State Farm decided to move toward settlement, and Rutledge was instructed to advise Ashby of State Farm's decision.

Rutledge attempted to call Ashby on October 19 and November 6, 7, 9, and 12. Calls were placed to Ashby's home and place of business. Rutledge was unable to contact Ashby. Rutledge did not write Ashby. On November 20, 1989, State Farm received suit papers. Prior to the time suit was filed, State Farm had made advances to Ashby, Inc. totaling $16,500.

State Farm did not deny coverage prior to the time that Ashby, Inc. filed suit. However, State Farm discovered information after suit was filed which it believed supported an arson claim. An arson issue was submitted to the jury. The jury answered the issue adversely to State Farm.[3]

Three theories of recovery were submitted to the jury: (1) contractual damages-- what Ashby, Inc. was owed under the terms of the policy; (2) failure to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claim once liability had become reasonably clear in violation of the insurance code and the Texas Deceptive Trade

---

[3] State Farm does not challenge the jury's arson response on appeal.

-10-

Practices-Consumer Protection Act;[4] and (3) breach of the common-law duty of good faith and fair dealing. Separate damage issues were submitted with respect to each theory.

With respect to contractual damages, the jury awarded Ashby, Inc. $80,000 for repair of the building to restore it to its use and occupancy prior to the fire; $90,000 as the replacement cost of the contents that were damaged or destroyed in the fire; and $20,000 for business interruption loss. For breach of Texas Insurance Code article 21.21-2(b)/DTPA, the jury awarded $75,000 for "lost investment in land and improvements;" $50,000 for loss of credit; $75,000 for lost past corporate profits; and $25,000 for loss of future corporate profits. The jury found that State Farm did not knowingly engage in acts or omissions constituting a breach of the insurance code/DTPA. The jury awarded Ashby, Inc. $10,000 for breach of the common-law duty of good faith and fair dealing. The jury found that the breach of the common-law duty of good faith and fair dealing was not committed knowingly. The jury found that thirty-three and one-third percent of the actual damages was the reasonable and necessary amount of Ashby, Inc.'s attorneys' fees.

The trial court entered judgment for Ashby, Inc. for $408,500 in actual damages.[5] The trial court added $136,166.67 as attorneys' fees to the amount of actual damages. The

---

[4] Certain violations of the insurance code also constitute violations of the Deceptive Trade Practices Act. *See* TEX. INS. CODE ANN. art. 21.21, § 16(a) (Vernon Supp. 1995); TEX. BUS. & COM. CODE ANN. § 17.41-.63 (Vernon 1987 & Supp. 1995) (DTPA); *see also Vail v. Texas Farm Bureau Mut. Ins. Co.*, 754 S.W.2d 129, 134 (Tex. 1988) (lack of good faith in investigation and processing of claim actionable); *Allied Gen. Agency, Inc. v. Moody*, 788 S.W.2d 601, 604 (Tex. App.--Dallas 1990, writ denied) (lack of good faith in settling claim actionable under DTPA).

[5] The parties stipulated that State Farm was entitled to a $16,500 offset representing the amounts it advanced to Ashby, Inc.

-11-

trial court awarded prejudgment interest at ten percent per annum from November 12, 1990 through December 20, 1991 on the actual damages and attorneys' fees. The trial court's judgment awarded postjudgment interest at ten percent per annum on all actual damages, attorney's fees, and prejudgment interest. Pursuant to the jury's findings, the trial court made conditional awards of attorneys' fees for appeals.

## BREACH OF THE INSURANCE CODE/DTPA AND THE COMMON-LAW DUTY OF GOOD FAITH AND FAIR DEALING

In its first four points of error, State Farm asserts there was no evidence or insufficient evidence to support the jury's findings that it breached the insurance code/DTPA and the common-law duty of good faith applicable to insurers and that it failed to promptly and fairly resolve the claim. These arguments were properly preserved through State Farm's motion for directed verdict (no evidence arguments) and motion for new trial (factual insufficiency arguments). *See Cecil v. Smith*, 804 S.W.2d 509, 510-11 (Tex. 1991).

### A. Standards of Review

When reviewing State Farm's no evidence points, we will consider only the evidence and inferences that tend to support the finding and disregard all evidence and inferences to the contrary. *Responsive Terminal Sys., Inc. v. Boy Scouts of Am.*, 774 S.W.2d 666, 668 (Tex. 1989). We must consider the evidence in the light most favorable to the verdict. *See Havner v. E-Z Mart Stores, Inc.*, 825 S.W.2d 456, 458 (Tex. 1992). It is not within our power to second guess the fact finder unless only one inference can be drawn from the

evidence. *Id.* at 461. If there is more than a scintilla of evidence to support the finding, the no evidence challenge fails. *See Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex. 1987). Evidence is more than a scintilla if it furnishes some "reasonable basis for differing conclusions by reasonable minds as to the existence of the vital fact." *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983). However, the quantum of evidence necessary to overcome a no evidence challenge is not necessarily enough evidence to support a verdict. Rather, it is merely enough evidence to warrant submission of the issue to the jury. *See id.*

The Texas Supreme Court has given us further instructions in performing a no evidence review of insurance bad-faith claims.

> [W]e believe that when a court is reviewing the legal sufficiency of the evidence supporting a bad faith finding, its focus should be on the relationship of the evidence arguably supporting the bad faith finding to the elements of bad faith. The evidence presented, viewed in the light most favorable to the prevailing party, must be such as to permit the logical inference that the insurer had no reasonable basis to delay or deny payment of a claim, and that it knew or should have known it had no reasonable basis for its actions. The evidence must relate to the tort issue of no reasonable basis for denial or delay in payment of a claim, not just to the contract issue of coverage. This is nothing more than a particularized application of our traditional no evidence review. This focus on the evidence and its relation to the elements of bad faith is necessary to maintain the distinction between a contract claim on the policy, and a claim of bad faith delay or denial of that claim, which arises from the tort duty we imposed on insurers in *Arnold* and *Aranda*.

*Lyons v. Millers Casualty Ins. Co.*, 866 S.W.2d 597, 600 (Tex. 1993) (citation omitted). First

we must determine whether the insurer had a reasonable basis for delaying or denying the claim. *See National Union Fire Ins. Co. v. Dominguez*, 873 S.W.2d 373, 376 (Tex. 1994). Then applying the "traditional rules of legal sufficiency, "we determine whether the insured presented evidence showing that the insurer lacked a reasonable basis for denying or delaying the claim. *See id.*

In reviewing factual insufficiency points, we review all of the evidence in the record, including any evidence contrary to the verdict. *Plas-Tex., Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989). We will set aside a jury's finding on the basis of a factual insufficiency or great weight and preponderance point only if we determine that the evidence is factually insufficient or so against the great weight and preponderance of the evidence as to be manifestly unjust, shocking to the conscience, or clearly demonstrating bias. *Ames v. Ames*, 776 S.W.2d 154, 159 (Tex. 1989), *cert. denied*, 494 U.S. 1080 (1990); *see also Pilkington v. Kornell*, 822 S.W.2d 223, 230-31 (Tex. App.--Dallas 1991, writ denied). If we are inclined to reverse on the basis of a factual insufficiency or great weight and preponderance point, we must "detail the evidence relevant to the issue in consideration and clearly state why the jury's finding is factually insufficient or is so against the great weight and preponderance as to be manifestly unjust; why it shocks the conscience; or clearly demonstrates bias." *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986). Additionally, we must set forth in what regard the contrary evidence greatly outweighs the evidence in support of the verdict. *Id.* If we sustain a factual insufficiency or great weight

-14-

and preponderance point, we can only remand the case. "Our present Constitution empowers the courts of appeals to 'unfind' facts, even if they cannot 'find' them." *Id.* at 634. We cannot substitute our interpretation of the evidence for that of the jury even if a different answer could be reached on the evidence. *See Herbert v. Herbert*, 754 S.W.2d 141, 144 (Tex. 1988).

## B. Applicable Law

An insurer breaches its common-law duty of good faith and fair dealing when it fails to promptly and equitably pay the insured's claim when liability becomes reasonably clear. *Aranda v. Insurance Co. of N. Am.*, 748 S.W.2d 210, 212-13 (Tex. 1988); *Allied Gen. Agency, Inc. v. Moody*, 788 S.W.2d 601, 604 (Tex. App.--Dallas 1990, writ denied). It is the insured's burden to show (1) the insurer did not have a reasonable basis for denying or delaying payment of the benefits of the policy and (2) the insurer knew or should have known that it had no basis for denying or delaying payment. *Aranda*, 748 S.W.2d at 213; *Caserotti v. State Farm Ins. Co.*, 791 S.W.2d 561, 566 (Tex. App.--Dallas 1990, writ denied).

> The first element of this test requires an objective determination of whether a reasonable insurer under similar circumstances would have delayed or denied the claimant's benefits. The second element balances the right of an insurer to reject an invalid claim and the duty of the carrier to investigate and pay compensable claims.

*Aranda*, 748 S.W.2d at 213. Insurers have the right to deny invalid or questionable claims without liability for an erroneous denial of a claim; however, insurers that breach the duty

of good faith and fair dealing may be subject to liability for their tortious conduct. *Id.*

> The threshold of bad faith is reached when a breach of contract is accompanied by an independent tort. Evidence that merely shows a bona fide dispute about the insurer's liability on the contract does not rise to the level of bad faith. Nor is bad faith established if the evidence shows the insurer was merely incorrect about the factual basis for its denial of the claim, or about the proper construction of the policy. . . . To the contrary, an insured claiming bad faith must prove that the insurer had no reasonable basis for denying or delaying payment of the claim, and that it knew or should have known that fact.

*Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 17-18 (Tex. 1994) (citations omitted).

## C. Application of Law to Facts

Question numbers five and seven addressed State Farm's settlement of the claims with Ashby, Inc.[6] Question numbers nine and ten dealt with State Farm's breach of the

---

[6] QUESTION NO. 5: Do you find that the insurance company failed to attempt in good faith to effectuate a prompt, fair and equitable settlement of the claims submitted by the insured when liability had become reasonably clear? Answer "Yes" or "No".

ANSWER: Yes

> You are instructed: An insurance company owes a duty of good faith and fair dealing to its insureds. A breach of the insurance company's duty exists when (1) there is an absence of a reasonable basis for denying or delaying payment of the benefit of the policy and (2) the insurance company knew or shown have known that there was not a reasonable basis for denying the claim or delaying payment of the claim.

> If you have answered Question No. 5 "Yes" then answer Question No. 6, otherwise proceed to Question No. 9.

* * * *

QUESTION NO. 7: Do you find that the acts or omissions which you found in Question No. 5 were a producing cause of damage to the insured? Answer "Yes" or "No".

ANSWER: Yes

implied covenant of good faith and fair dealing.[7] State Farm contends the evidence is legally and factually insufficient to support the jury's answers to these questions.

## 1. No Evidence

Based upon its investigation of the fire scene and reports received from third parties, State Farm had reason to investigate the possibility of arson. The fire started in the early morning hours, the building was locked and there was no sign of forced entry, there was evidence that accelerants were involved, and there were multiple points of origin of the fire. Thus, initially, State Farm had a reasonable basis to delay payment of the claim while it conducted its investigation. However, State Farm also knew that Ashby, Inc. could not operate its business until the building was repaired and its contents replaced. Thus, State Farm was also aware that it was important to Ashby, Inc. that the investigation be

---

[7]

QUESTION NO. 9: Do you find that the insurance company breached the implied covenant of good faith and fair dealing in the business of insurance with the insured? You are instructed that in connection with Question No. 9, breach of an implied covenant of good faith and fair dealing in the business of insurance means that: (1) there is a contract between the insurer and the insureds; (2) the insurer denied the insured's claim or delayed in payment; (3) there was absence of a reasonable basis for the insurer's denying or delaying payment of the insured's claim; and the insurer knew or should have known there was not a reasonable basis for denying or delaying payment of the claim. Answer "Yes" or "No".

ANSWER: Yes

If you have answered Question No. 9 "Yes" then answer Question 10; otherwise proceed to Question No. 14.

QUESTION NO. 10: Do you find that the insurance company's breach, if any, of the implied covenant of good faith and fair dealing with its insured was the proximate cause of any damages, if any, sustained by the insured? Answer "Yes" or "No".

ANSWER: Yes

-17-

completed quickly and the claim adjusted promptly.

Prior to the time suit was filed by Ashby, Inc., State Farm never denied the claim. On October 17, 1989, State Farm determined that it had no reasonable basis for denying the claim because it could not find a motive or link between Ashby, Inc. and the fire. State Farm completed its arson investigation by August 27, 1989, when it received a third party's report indicating that it could not link Ashby, Inc. to the fire. The report did suggest some further areas of investigation; however, State Farm did not pursue any of them during the claim adjusting period. Thus, State Farm cannot claim that its arson investigation was a reason to delay resolution of Ashby, Inc.'s claim after August 27, 1989.

State Farm did virtually nothing from August 24 through October 3, 1989. Evidence in the record indicates that State Farm actively refused to deal with Ashby, Inc. during this period. Rutledge, the adjuster assigned to Ashby, Inc.'s case, was on storm duty and vacation during this period of time. Ashby, Inc. presented expert testimony that such a long period of time with no activity was unreasonable.

After October 17, State Farm attempted to contact Ashby, Inc. by phone, through Ashby, several times. Most of the calls were placed to one of Ashby's places of residence during business hours. One call was placed to Ashby's place of business on a Sunday morning. State Farm never tried to contact Ashby through his attorney, relatives, or friends even though it had the necessary information to do so. State Farm did not try to contact Ashby, Inc. by mail. State Farm had earlier rejected Ashby's offer to sign for a reservation

of rights letter in its office, electing rather to send the letter by mail with the consequent delay in handling the claims. The responsible adjuster offered no explanation for failure to contact Ashby, Inc. by mail other than that he did not think of using the alternative means. Ashby, Inc. presented expert testimony that State Farm's efforts to contact it were unreasonable.

Evidence was presented at trial indicating that Ashby, Inc. had done everything that State Farm had asked it to do during the adjusting period. Evidence was also presented showing that State Farm never made a complete or adequate determination during the adjusting period of what it thought Ashby, Inc. was entitled to under the policy.

State Farm knew Ashby, Inc. could not conduct its business until the building was repaired and its contents replaced. It also knew Ashby, Inc. was incurring expenses even though it was not open for business.

The arson investigation did not delay resolution of the claim after Ashby, Inc. did everything that was asked of it in a timely fashion. State Farm failed to complete its analysis of the loss within the time limits set forth in the insurance policy. Even though Ashby, Inc. requested it to do so, State Farm never made an offer to Ashby, Inc. From the foregoing facts, the jury could have reasonably concluded that State Farm was "stringing along" a distressed insured in bad faith in an effort to force an inequitable settlement and that the delay proximately caused Ashby, Inc. injury. The evidence supported the existence of an independent tort, as found by the jury, above and beyond any breach of contract.

We overrule State Farm's first and third points of error.

## 2. Insufficient Evidence

State Farm had a reasonable basis for investigating arson. This matter was hardly disputed at trial. After August 27, State Farm cannot rely on arson as a reason for delaying resolution of the claim. At trial, State Farm claimed that Ashby, Inc.'s actions, such as not signing the waiver letter, delayed resolution of the claim. However, all of the asserted deficiencies on Ashby, Inc.'s part were rectified by the end of July. State Farm's bad faith expert could not identify a single specific action which Ashby, Inc. did or did not do that resulted in delay of resolution of the claim. The responsible adjuster indicated that Ashby, Inc. did everything it was asked to do.

Except for testimony that its adjuster was on vacation and storm duty between August 27, 1989 and October 3, 1989, State Farm gave no explanation as to why there was no activity regarding the claim during that period. State Farm presented no evidence showing that it did not have the resources to assign someone else to the claim during this period. State Farm's expert conceded that a month without activity on a file would work a hardship on an insured.

State Farm retained an analyst to examine Ashby, Inc.'s inventory loss and business interruption loss on July 20, 1989. By October 19, the analyst was "almost finished" with his report. State Farm received the report in early November. The analyst's report was incomplete when it was transmitted to State Farm. It noted that there were a number of

public records which could and should be obtained that would assist the analysis. No explanation was provided as to why the analyst did not obtain the documents or why State Farm did not obtain the documents. At no time during the claim adjusting period did State Farm attempt to obtain such documents even though it knew they were material to evaluating Ashby, Inc.'s loss.

State Farm asserts that Ashby, Inc.'s "destruction" of the contents of the store delayed resolution of the claim because State Farm was denied the opportunity to recover salvage value and accurately assess the loss. On the day of the fire, State Farm told Ashby, Inc. not to touch anything. More than a month later, on August 4, State Farm went to the store to examine the inventory. By that time, the inventory had been removed. There is nothing in the record showing that State Farm ever told Ashby, Inc. why the inventory had to remain. Evidence was presented from which the jury could have concluded State Farm knew or should have known that some or all of the contents of the store were being removed prior to the time it went to examine them.

Ashby, Inc. filed its sworn proof of loss by August 20, 1989. Ashby, Inc.'s insurance policy provided in relevant part that:

> The amount of loss for which this Company may be liable shall be payable sixty days after proof of loss, as herein provided, is received by the Company and ascertainment of the loss is made either by agreement between the insured and this Company expressed in writing or by the filing with this Company of an award as herein provided.

Even though its investigation was completed by the end of August, State Farm did not make the determination that it could not maintain an arson defense until October 17, a mere two days before the sixty-day period contemplated by the policy expired. At best, State Farm was less than diligent in its efforts to contact Ashby, Inc. after October 17 to discuss settlement. More importantly, State Farm was never prepared to discuss settlement with Ashby, Inc. during the adjusting period. State Farm had not thoroughly inspected the building to determine whether the electrical or heating/air conditioning system needed repair. State Farm's evaluation of Ashby, Inc.'s business interruption and lost profits claims was never completed. From the evidence presented at trial, the jury could have concluded that State Farm's failure to adequately and completely evaluate Ashby, Inc.'s claims within the time periods contemplated by the insurance policy was the product of State Farm's bad faith and lack of diligence.

State Farm did make partial payments totaling $16,500 during the adjusting period. However, this was a fraction of the total coverage afforded by the policy and a mere portion of the undisputed amount of the loss.

From the evidence presented at trial, the jury could have concluded that (1) State Farm was not diligent in evaluating its arson claim and Ashby, Inc.'s damages; (2) State Farm failed to use adequate efforts to contact Ashby, Inc. in October and November; (3) State Farm's failure to work the claim and communicate with Ashby, Inc. between August 24 and October 3 was unreasonable; and (4) during the adjusting period, State Farm was

never prepared to fairly discuss or dispute Ashby, Inc.'s claim because its investigation was spotty and incomplete. State Farm also knew that Ashby, Inc. could not operate until the building was repaired and inventory replaced. From the foregoing, the jury could have concluded that State Farm attempted to take advantage of a distressed insured by delaying resolution of the claim without adequate justification. There was factually sufficient evidence to support the jury's findings that State Farm acted in bad faith and unreasonably delayed resolution of the claim to Ashby, Inc.'s detriment.

In its brief, State Farm conjectures that the jury's findings were predicated upon conduct which occurred after Ashby, Inc. filed suit. State Farm asserts that it is being penalized for litigating its defense to the claim. Evidence of postsuit activity was introduced without objection or request for an instruction limiting the jury's consideration of it. State Farm did not object to the charge on the basis that it was improper for the jury to consider postsuit activities in determining whether there was unreasonable delay or bad faith. Thus, State Farm failed to preserve error, if any. *See* TEX. R. APP. P. 52(a). Further, the error, if any, was harmless. As discussed above, there was sufficient evidence of presuit activity to support the jury's findings. State Farm's argument that the jury's verdict was based on postsuit activity is speculation and is unsupported by the record.

We overrule State Farm's second and fourth points of error.

## CONDUCT OF ASHBY, INC.'S COUNSEL

In its fifth point of error, State Farm asserts the trial court erred in not granting a mistrial and/or its motion for new trial because (1) Ashby, Inc.'s lead counsel testified as a material fact witness and expert witness beyond the issue of attorney's fees; and (2) the conduct of Ashby, Inc.'s counsel prior to and during trial violated the rules of professional conduct.

### A. Standard of Review

Generally, the granting or denying of a motion for mistrial is reviewed on an abuse of discretion standard. *See Ussery v. Gray*, 804 S.W.2d 232, 237 (Tex. App.--Fort Worth 1991, no writ) (disqualification of attorney); *Mendoza v. Ranger Ins. Co.*, 753 S.W.2d 779, 781 (Tex. App.--Fort Worth 1988, writ denied) (jury selection). A trial court's grant or denial of a motion for new trial is also reviewed under an abuse of discretion standard. *Champion Int'l Corp. v. Twelfth Court of Appeals*, 762 S.W.2d 898, 899 (Tex. 1988) (per curiam); *Fluty v. Simmons Co.*, 835 S.W.2d 664, 666 (Tex. App.--Dallas 1992, no writ).

### B. Attorney Testifying as Fact Witness

The substance of State Farm's complaint is that the trial court failed to properly limit the scope of Ashby, Inc.'s counsel's testimony. A trial court's rulings on the admission or exclusion of evidence are reviewed under an abuse of discretion standard. *Coker v. Burghardt*, 833 S.W.2d 306, 309 (Tex. App.--Dallas 1992, writ denied); *see also Ginsberg v. Fifth Court of Appeals*, 686 S.W.2d 105, 108 (Tex. 1985) (holding admission of evidence

rests largely within the discretion of the trial court). Failure to request the court to instruct the jury to disregard inadmissible evidence results in waiver of any error stemming from the admission of the evidence. *State Bar v. Evans*, 774 S.W.2d 656, 658 n.6 (Tex. 1989) (per curiam).

Ashby, Inc.'s counsel testified at great length at trial. His testimony often went beyond the issue of the reasonableness of his attorney's fees. He testified as to his opinions regarding State Farm's lack of good faith and his course of dealings with State Farm prior to and after suit was filed.

State Farm made numerous objections to Ashby, Inc.'s counsel's testimony. Most of the objections were sustained. On appeal, State Farm does not complain of a single instance in which the trial court failed to sustain a specific objection to such testimony. State Farm does not argue that counsel's allegedly improper testimony was such that it presented incurable error that could not be corrected through instruction to the jury to disregard it. The gravamen of State Farm's complaint on appeal is that Ashby, Inc.'s counsel's testimony was heard and considered by the jury.

On appeal, State Farm argues that the trial court erred in overruling its motions for new trial/mistrial because Ashby, Inc.'s counsel should have been disqualified because he testified to matters outside attorney's fees. State Farm does not dispute that said counsel could properly testify as to attorney's fees. *See* Tex. Disciplinary R. Prof. Conduct 3.08(a)(3) (1994), *reprinted in* Tex. Gov't Code Ann. tit. 2, subtit. G app. A (Vernon Supp.

1995). We have reviewed Ashby, Inc.'s counsel's testimony and agree it extended beyond the issue of attorney's fees. However, State Farm does not identify any instances where the trial court allowed Ashby, Inc.'s counsel to testify outside the issue of attorney's fees over its specific objection.

Ashby, Inc.'s counsel was entitled to testify at trial as to attorney's fees.[8] It was incumbent upon State Farm to take the necessary steps to limit such testimony to attorney's fees. Instructions to the jury limiting its consideration of counsel's testimony could have prevented any unfair prejudice. State Farm failed to take the necessary steps--objecting and requesting instructions--to minimize the potentially unfairly prejudicial impact of counsel's testimony. Under these circumstances, we cannot say the trial court abused its discretion in not granting State Farm's motion for mistrial or motion for new trial.

## C. Ashby, Inc.'s Counsels' Behavior Prior to And During Trial

State Farm asserts that Ashby, Inc.'s counsel threatened witnesses and opposing counsel and ignored the trial court's orders in violation of the Texas Disciplinary Rules of Professional Conduct. Control of counsel prior to and during trial is a matter lying within the sound discretion of the trial court, and a reviewing court will not interfere unless it is clear that the trial court abused its discretion. *Wells v. HCA Health Servs.*, 806 S.W.2d 850, 854 (Tex. App.--Fort Worth 1990, writ denied); *Mandril v. Kasishke*, 620 S.W.2d 238, 247

---

[8] The facts are distinguishable from *Warrilow v. Norrell*, 791 S.W.2d 515, 523 (Tex. App.--Corpus Christi 1989, writ denied), wherein the attorney's testimony comprised approximately 341 pages of 1090 pages (nearly one-third) of the testimony offered by the plaintiff, the bulk of such testimony apparently being unrelated to attorney's fees.

(Tex. Civ. App.--Amarillo 1981, writ ref'd n.r.e.).

The question of whether Ashby, Inc.'s counsel violated the Texas Disciplinary Rules of Professional Conduct is not dispositive of any issue before us.

> [T]hese rules are not designed to be standards for procedural decisions. Furthermore the purpose of these rules can be abused when they are invoked by opposing parties as procedural weapons. The fact that a rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the rule. Accordingly, nothing in the rules should be deemed to augment any substantive legal duty of lawyers or the extra-disciplinary consequences of violating such a duty.

TEX. DISCIPLINARY R. PROF. CONDUCT Preamble, Scope § 15 (1994), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A (Vernon Supp. 1995) (STATE BAR RULES art. X, § 9). The question before us is whether the trial court abused its discretion in denying State Farm's motion for mistrial and/or motion for new trial because of Ashby, Inc.'s counsels' conduct.

State Farm has alleged that Ashby, Inc.'s counsel engaged in improper conduct ranging from leading witnesses to witness tampering in violation of Texas Penal Code section 35.05. Ashby, Inc.'s counsel disputed these charges and their evidentiary foundation. The trial court conducted an evidentiary hearing on these matters. From the record before us, it appears that the evidentiary hearing regarding Ashby, Inc.'s counsels' threatening of

witnesses was not completed. In some instances, the trial court exonerated Ashby, Inc.'s counsel. In others, it found his conduct inappropriate.

The trial court took State Farm's complaints about Ashby, Inc.'s counsel seriously. It sustained many of State Farm's objections and went so far as to threaten Ashby, Inc.'s counsel with contempt. State Farm's complaint is that the trial court should have gone further and granted it a mistrial or a new trial. State Farm has not directed us to (1) any incident absolutely requiring a mistrial/new trial or (2) any authority regarding the incidents about which it does complain which requires a mistrial/new trial. While we have not detailed each of the alleged improprieties, we have examined each of them in light of the attendant circumstances. We conclude the alleged improprieties were not so fundamentally detrimental to the trial as to necessitate a mistrial.

The trial court was in the best position to evaluate Ashby, Inc.'s counsels' conduct and its impact on the trial. It took affirmative steps to control Ashby, Inc.'s counsel. Under these circumstances and on the basis of the record before us, we find no abuse of discretion. We overrule State Farm's fifth point of error.

## UNQUALIFIED EXPERTS

In its sixth and seventh points of error, State Farm asserts the trial court abused its discretion in allowing John Agnew and Christopher Weil to testify as experts. State Farm's position is that they were not qualified to render the opinions they did, particularly because they were not licensed insurance adjusters.

## A. Applicable Law

Whether a witness is allowed to testify as an expert witness is a matter of judicial discretion. *Prellwitz v. Cromwell, Truemper, Levy, Parker & Woodsmale, Inc.*, 802 S.W.2d 316, 317 (Tex. App.--Dallas 1990, no writ). A trial court's determination will not be disturbed on appeal unless the record shows "it clearly abused its discretion." *Id.*

The party offering an expert witness has the burden of establishing the expert's qualifications. *Id.* A purported expert's qualifications can be established through a predicate showing "knowledge, skill, experience, training or education." TEX. R. CIV. EVID. 702. However, a witness who is to give an expert opinion about the standard of care within a particular licensed profession must ordinarily be licensed in that same profession. *See Prellwitz*, 802 S.W.2d at 317 (architects and mechanical engineers); *see also Bilderback v. Priestley*, 709 S.W.2d 736, 740 (Tex. App.--San Antonio 1986, writ ref'd n.r.e.) (op. on reh'g) (doctors); *Tijerina v. Wennermark*, 700 S.W.2d 342, 347 (Tex. App.--San Antonio 1985, no writ) (lawyers), *disapproved on other grounds, Cosgrove v. Grimes*, 774 S.W.2d 662 (Tex. 1989) (op. on reh'g); *Johnson v. Hermann Hosp.*, 659 S.W.2d 124, 126 (Tex. App.--Houston [14th Dist.] 1983, writ ref'd n.r.e.) (nurses). *But see State v. Taylor*, 721 S.W.2d 541, 551 (Tex. App.--Tyler 1986, writ ref'd n.r.e) (appraiser who was not licensed real estate broker but who had more than nine years' experience as an independent real estate appraiser, was a member of the International Institute of Appraisers and the National Association of Appraisers, and had experience in making appraisals for banks and

condemning authorities was qualified to render value and damages opinions in condemnation proceeding).

Individuals who adjust insurance claims must be licensed as agents under Texas law. *See* TEX. INS. CODE ANN. art. 21.02, § 2(a) (Vernon Supp. 1995) (defining "agent" to include those who adjust claims); TEX. INS. CODE ANN. art. 21.07 (Vernon Supp. 1995) (requiring agents to be licensed); TEX. INS. CODE ANN. art. 21.07-4, § 2(a) (Vernon 1981) (specifically requiring adjusters to be licensed); 28 TEX. ADMIN. CODE § 19.602 (West 1992-93) (Texas Department of Insurance) (types of adjuster's licenses authorized). In order to be licensed, an adjuster must (1) demonstrate to the licensing board that he has "experience or special education or training . . . of sufficient duration and extent to make him competent to fulfill the responsibilities of an insurance adjuster" and (2) he must pass an examination. TEX. INS. CODE ANN. art. 21.07-4, § 7 (Vernon 1981). Attorneys are exempted from the licensure requirement to the extent they may perform adjusting activities in the course of their practice of law. *See* TEX. INS. CODE ANN. art. 21.02 (Vernon Supp. 1995); TEX. INS. CODE ANN. art. 21.07-4, § 1(1)(b)(1) (Vernon Supp. 1995).

## B. Application of Law to Facts

Agnew and Weil expressed their opinions that State Farm had breached the duty of good faith and fair dealing. State Farm complains that Agnew and Weil were not qualified to testify as expert witnesses, and the trial court erred in allowing them to testify as such.

-30-

Ashby, Inc. offered John Agnew as an expert on attorney's fees and bad-faith claims practices. Agnew was licensed to practice law in 1970. He did not hold an adjuster's license. He had engaged in a mixed plaintiff/defendant trial practice. He had represented insurance carriers on coverage questions and exposure regarding bad-faith claims. He had handled some lawsuits involving fires. Apart from his activities as a lawyer, he had never been a claims manager or done anything with respect to adjusting claims from the insurer's point of view.

Ashby and Ashby, Inc. offered Christopher Weil as a rebuttal witness and elicited testimony regarding interpretation of the subject insurance policy. Weil is an attorney. He had significant experience in the litigation of fire insurance policies.

Whether a witness is allowed to testify as an expert is within the discretion of the trial court. *Prellwitz*, 802 S.W.2d at 317. The trial court's determination will not be reversed except for abuse of discretion. Based on the information before the trial court, we conclude the trial court did not abuse its discretion in allowing Agnew and Weil to testify as expert witnesses. An attorney who has been involved in handling insurance cases may be more qualified to testify as an expert concerning bad-faith claims than a licensed adjuster with limited expertise in the area. We overrule State Farm's sixth and seventh points of error.

### TESTIMONY REGARDING JOE BEN ASHBY, JR.'S TRUTHFULNESS

In its eighth point of error, State Farm asserts the trial court erred in allowing Ashby, Inc.'s arson expert to testify regarding Mr. Ashby's truthfulness. On appeal, State Farm

asserts that the investigator's testimony violated the exclusive province of the jury and was admitted in violation of Texas Rule of Civil Evidence 702. At trial, State Farm objected to the testimony arguing that the testimony was beyond the witness's designated expertise.

Ashby, Inc. called John L. Henning, III as an expert witness on arson investigation and the fire at issue in this case. Henning had extensive experience as a fire and arson investigator in the public and private sectors. He had investigated suspected arsons for a number of insurance companies, including State Farm. Henning testified that evaluating witnesses' veracity was part of his experience and training. Henning's qualifications to render opinions regarding the fire in issue and arson are not disputed.

State Farm did not make the objections at the trial court level it now asserts on appeal. Therefore, it failed to preserve the arguments for appeal. *See* TEX. R. APP. P. 52(a). We overrule State Farm's eighth point of error.

## DAMAGES

In its ninth and tenth points of error, State Farm attacks the legal and factual sufficiency of the evidence to support some of the damages recovered by Ashby, Inc.[9] State

---

[9] State Farm complains specifically of the jury's answers to question number eight. Question eight asked the following:

> QUESTION NO. 8: What sum of money, if any, paid now in cash, would fairly and reasonably compensate the insured for its damages incurred as a result of the acts or omissions that you found in Question No. 5? You are to consider each element of damage separately, so as not to include damages for an element in any other element. Answer separately in dollars and cents, if any, with respect to each item.

> (a)     Lost investment in land and improvements.
> ANSWER: $75,000.00

(continued...)

-32-

Farm also argues, although indirectly, that some of the damages awarded to Ashby, Inc. are barred by the single satisfaction rule.

## A. Injury to Realty

### 1. Applicable Law

The type of compensation to be awarded a property owner for damage to his property depends on the type of injury in issue. *Kraft v. Langford*, 565 S.W.2d 223, 227 (Tex. 1978). Permanent injuries to property, other than chattels, give rise to damages measured by the value of the property before and after the injury. *Id.* Damages for temporary injuries are measured as the amount necessary to place the owner in the position he was in prior to the injury. *Id.* When an injury to realty is repairable, the proper measure of damages is the cost of repair. *Hollingsworth Roofing Co. v. Morrison*, 668 S.W.2d 872, 876 (Tex. App.--Forth Worth 1984, no writ); *see also General Supply & Equip. Co. v. Phillips*, 490 S.W.2d 913, 919 (Tex. Civ. App.--Tyler 1972, writ ref'd n.r.e.) (cost of repair is generally measure of damages for injury to realty). Generally, an injury which can be terminated or which is short in duration is temporary. *Kraft*, 565 S.W.2d at 227. The

---

[9](...continued)
  (b)     Loss of credit.
        ANSWER: $50,000.00

  (c)     Past loss of corporate profits[.]
        ANSWER: $75,000.00

  (d)     Loss of corporate profits in reasonable probability in the future.
        ANSWER: $25,000.00

concepts of temporary and permanent injuries are mutually exclusive, and damages for both may not be recovered in the same action. *Yancy v. City of Tyler*, 836 S.W.2d 337, 340 (Tex. App.--Tyler 1992, writ denied) (op. on reh'g); *see also Kraft*, 565 S.W.2d at 227.

"The [single] satisfaction rule applies to prevent a plaintiff from obtaining more than one recovery for the same injury." *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 7 (Tex. 1991). This rule prevents a plaintiff from recovering the same elements of damages for a given injury even if the wrongful conduct is actionable under different theories. *See Mayo v. John Hancock Mut. Life Ins. Co.*, 711 S.W.2d 5, 7 (Tex. 1986).

## 2. Application of Law to Facts

In response to jury question number two, the jury found that the cost of repair of the building was $80,000. In response to jury question 8(a), the jury found that Ashby, Inc. suffered $75,000 in damages as a result of lost investment in land and improvements. State Farm asserts that as a matter of law, the only properly recoverable damages were the costs of repair and that Ashby, Inc. cannot recover both elements of damage.

There are two distinct injuries in this case, and only one involves damage to the realty. Ashby, Inc.'s first injury occurred when the building burned. Under the policy issued by State Farm, Ashby, Inc. was entitled to recover for damage to the realty, that is, the cost of repairs.

The second injury occurred after the fire when Ashby, Inc. was forced to sell the land and improvements at a greatly reduced price. Ashby, Inc. was forced to sell because State

Farm refused to pay the submitted claims even though the policy covered business interruption losses. Ashby testified that he sold the land and improvements because he could not make the payments and feared foreclosure. This was not an injury to the realty.

Based upon the evidence, the jury could have believed Ashby, Inc. was situated on a very lucrative piece of real estate. Ashby testified he purchased the land for $60,000 and built a $60,000 shell on it in 1969. Over the years Ashby received several inquiries about selling or leasing the property, and had rejected one offer to purchase the property for $650,000.

Ashby further testified that the land was appraised at $434,000 prior to the fire. There was evidence that the land and building were assessed at a value of $306,910 for property tax purposes in April 1989. After the fire, Ashby sold the property and building for $175,000. He characterized the sale as a "fire sale" necessitated by his inability to make the loan payments.

The jury charge did not define "lost investment in land and improvements." However, based upon the evidence concerning the value of the property before and after the fire, the jury could have reasonably concluded that Ashby, Inc. lost its investment in the land and improvements. We overrule State Farm's ninth point of error to the extent it complains of a double recovery on the property damage.

## B. Loss of Credit

State Farm asserts that the evidence was legally and factually insufficient to support the jury's award of $50,000 for loss of credit. State Farm does not challenge the amount awarded as being excessive.

Loss of credit is a recoverable element of damages in insurance cases such as this. *See Automobile Ins. Co. v. Davila*, 805 S.W.2d 897, 908 (Tex. App.--Corpus Christi 1991, writ denied), *disapproved on other grounds, Hines v. Hash*, 843 S.W.2d 464 (Tex. 1992). Damages for loss of credit are not subject to precise determination. *See Commonwealth Lloyd's Ins. Co. v. Thomas*, 825 S.W.2d 135, 146-47 (Tex. App.--Dallas 1992), *writ granted without reference to merits, judgment vacated*, 843 S.W.2d 486 (Tex. 1993); *American Bank v. Waco Airmotive, Inc.*, 818 S.W.2d 163, 175 (Tex. App.--Waco 1991, writ denied); *Davila*, 805 S.W.2d at 908. Because there is no special guide or rule in measuring damages for loss of credit, the amount of damages awarded is a matter within the discretion of the jury. *American Bank*, 818 S.W.2d at 175. "Unless an award of such damages is flagrantly outrageous, extravagant, and so excessive as to shock the judicial conscience, it should not be disturbed." *Id.*

Two of Ashby, Inc.'s creditors testified that Ashby, Inc. had a good credit reputation with them prior to the fire and that it had suffered since the fire. One creditor testified that it would no longer sell to Ashby, Inc. on open account. In the absence of a claim of excessiveness, the foregoing is legally and factually sufficient evidence to support the jury's

award. We overrule State Farm's ninth and tenth points of error with respect to the award for loss of credit.

## C. Lost Profits

"Recovery for lost profits does not require the loss be susceptible of exact calculation." *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 84 (Tex. 1992). However, the amount of the loss must be shown by competent evidence and with reasonable certainty. *Id.*; *D/FW Commercial Roofing Co., Inc. v. Mehra*, 854 S.W.2d 182, 187 (Tex. App.--Dallas 1993, no writ). "What constitutes reasonably certain evidence of lost profits is a fact intensive determination. As a minimum, opinions or estimates of lost profits must be based on objective facts, figures, or data from which the amount of lost profits can be ascertained." *Heine*, 835 S.W.2d at 84.

Evidence of lost income, standing alone, is not evidence of lost profits. *Id.* The record must show how the lost profits were calculated. *See id.*; *Frank B. Hall & Co. v. Beach, Inc.*, 733 S.W.2d 251, 259 (Tex. App.--Corpus Christi 1987, writ ref'd n.r.e.); *Village Square, Ltd. v. Barton*, 660 S.W.2d 556, 559-60 (Tex. App.--San Antonio 1983, writ ref'd n.r.e.).

> A party must show either a history of profitability or the actual existence of future contracts from which lost profits can be calculated with reasonable certainty. Texas cases permit recovery for lost profits in reliance upon routinely kept business records so long as the evaluation of the business's decreased profitability is based upon objective facts, figures, and data.

*Mehra*, 854 S.W.2d at 187 (citations omitted)

The jury awarded $75,000 for lost past profits and $25,000 for lost future profits. State Farm asserts that the evidence was legally and factually insufficient to support the jury's awards of lost profits.[10] Ashby, Inc. directs this Court to a variety of evidence it introduced regarding cost of inventory, income stream, overhead, and a large number of Ashby, Inc.'s business records.

The record contains some evidence of Ashby, Inc.'s historical profitability or lack thereof. For many of the years prior to the fire, Ashby, Inc. operated at a loss: 1980 (loss of approximately $11,000), 1981 (loss of approximately $15,000)[11], 1982 (loss of approximately $54,000), 1983 (loss of approximately $55,000), 1986 (loss of approximately $36,000), 1988 (net income per books as reflected on 1988 income tax return shows a loss of $4,667.54). In 1987, Ashby, Inc. had net income per its books as reflected in its 1987 income tax return of $1167.07. Some evidence was introduced indicating that Ashby, Inc. had a profit of $2500 during the first six months of 1989. There was also testimony that the numbers shown on the financial statements for 1989 did not take into account all of the outstanding liabilities, such as an approximately $1600 to $1700 per month mortgage owed to Chrysler Corporation.

---

[10] State Farm does not challenge the $20,000 the jury awarded as compensation for the business interruption loss in response to jury question number four.

[11] Some evidence was presented indicating that after depreciation and allowing for business loss carry forward, Ashby, Inc. may have broken even after taxes in 1980 and 1981.

"Net profits" is defined as "what remains in the conduct of a business after deducting from its total receipts all of the expenses incurred in carrying on the business." *Turner v. PV Int'l Corp.*, 765 S.W.2d 455, 465 (Tex. App.--Dallas 1988), *writ denied per curiam*, 778 S.W.2d 865 (Tex. 1989). The supreme court has not sanctioned one particular method for determining lost profits, nor has the court said the calculation must be reduced to writing and shown to the jury. The court did, however, state that "once a party has chosen a particular method for measuring lost profits, they must provide a complete calculation." *Heine*, 835 S.W.2d at 85. Pieces of several different methods of calculating lost profits do not support one complete calculation.

We interpret *Heine* to mean that once a party has chosen the method for determining lost profits, it must include sufficient evidence to show profits with a reasonable certainty. This information would include the existence of known liabilities related to the operation of the business.

Ashby, Inc.'s evidence of profits did not take into account all known liabilities associated with running the business. Ashby, Inc. did not present one complete calculation. We conclude the evidence is legally insufficient to support the award for lost profits.

We sustain State Farm's ninth point of error with respect to lost past and future profits. We render judgment that Ashby, Inc. take nothing on its claims for lost profits.

## PREJUDGMENT INTEREST ON ATTORNEYS' FEES AND FUTURE DAMAGES

State Farm argues in its eleventh point of error that the trial court erred as a matter of law in awarding prejudgment interest on attorneys' fees and future damages. State Farm also asserts a constitutional challenge to such award. We have disallowed Ashby, Inc.'s recovery of future damages. Prejudgment interest is not recoverable on attorneys' fees because attorney's fees are not part of the "amount of the judgment." *See C & H Nationwide v. Thompson*, 37 Tex. Sup. Ct. J. 1059, 1068 (June 22, 1994); *Ellis County State Bank v. Keever*, 888 S.W.2d 790, 797 n.13 (Tex. 1994).

We sustain State Farm's eleventh point of error. We reverse the trial court's judgment to the extent it awarded prejudgment interest on future damages and attorneys' fees. Because of our disposition of its eleventh point of error, it is not necessary to address the constitutional arguments urged therein by State Farm.

## ASHBY, INC.'S CROSS-POINTS OF ERROR

Ashby, Inc.'s four cross-points of error are directed at the trial court's submission of a jury issue regarding knowing breach of the insurance code/DTPA[12] and its refusal to treble the damages it recovered under its insurance code/DTPA cause of action. All of Ashby, Inc.'s complaints turn on whether the trial court erred in granting State Farm's post-

---

[12]

QUESTION NO. 6: Do you find that the act or omissions which you found in [Q]uestion No. 5 was engaged in knowingly? Answer "Yes" or "No".

ANSWER: No

verdict trial amendment. Ashby, Inc. essentially concedes that if the trial court did not err in granting State Farm's trial amendment, its cross-appeal is meritless.

## A. Procedural Background

State Farm's original answer contained a general denial. However, its subsequent answers did not contain a general denial and only asserted arson as a defense. State Farm candidly admits that its live pleading "failed to deny *any* of [Ashby, Inc.'s] allegations." Ashby, Inc. did not object to the lack of a general denial or any other deficiency in State Farm's answer prior to the time the charge was prepared. It did not move for a default judgment before jury selection or commencement of its case in chief. While it did not object to the basic liability questions, Ashby, Inc. objected to the court's proposed instruction on the issue of whether State Farm "knowingly" breached the insurance code/DTPA. Ashby, Inc. moved for an instructed verdict on the "knowingly" issue, objected to submission of the issue to the jury, moved for judgment n.o.v. when the jury answered the questions adversely to it, and moved to disregard the jury's responses. The trial court denied all of Ashby, Inc.'s motions largely on the ground that the issue was tried by consent.

State Farm sought leave to file a postverdict trial amendment which put "knowingly" in issue. The trial court granted leave. Ashby, Inc. objected to the posttrial amendment arguing that it was surprised and prejudiced by the interjection of the "new" issue into the case.

## B. Applicable Law

The governing law regarding trial amendments was set out by this Court in *Whatley v. City of Dallas*, 758 S.W.2d 301 (Tex. App.--Dallas 1988, writ denied).

> To determine whether parties have impliedly consented to trial of an unpleaded cause of action, the trial court must carefully consider the proceedings as a whole. The trial court has broad discretion in determining whether an unpleaded claim has been tried by implied consent of the parties. The trial court is to exercise that discretion liberally in favor of justice. However, trial amendments are to be the exception, not the rule, and should not be allowed in doubtful cases.

*Id.* at 306 (citations omitted). A litigant objecting to a trial amendment bears the burden of showing that the "allowance of such amendment would prejudice him in maintaining his action or defense upon the merits." Tex. R. Civ. P. 66.

## C. Application of Law to Facts

The trial court correctly allowed State Farm's trial amendment and overruled Ashby, Inc.'s various motions. Ashby, Inc. was aware of the defect before trial started. Ashby, Inc. asserts that it was prejudiced by the trial amendment because it intended to rely on State Farm's failure to deny Ashby, Inc.'s "knowingly" allegations with respect to violation of the insurance code/DTPA. We reject Ashby, Inc.'s argument. Ashby, Inc.'s assertion that while the question of whether State Farm acted wrongfully was in issue, the question of whether the allegedly wrongful conduct was committed knowingly was not, is illogical. If a party denies committing a wrongful act, by unavoidable implication it denies committing the

wrongful act knowingly. We overrule Ashby, Inc.'s cross-points of error.

## ASHBY'S MOTION FOR RULE 84 SANCTIONS

Appellee Joe Ben Ashby, Jr. filed a motion for rule 84 sanctions. *See* TEX. R. APP. P. 84. As we understand Ashby's argument, he asserts State Farm's appeal as to him individually must be frivolous and for purposes of delay because State Farm has not challenged the take-nothing judgment rendered in his favor.[13]

Ashby was a party to the underlying litigation. The jury found that Ashby was the alter ego of Ashby, Inc. In his motion, Ashby asserts State Farm sought to recover its attorney's fees incurred in defending the "Unfair Claims Practices/Texas Deceptive Trade Practices claims." Based on the foregoing, we conclude that State Farm did not appeal as to Ashby without sufficient cause and for purposes of delay. We deny Ashby's motion for rule 84 sanctions.

## DISPOSITION

We affirm that portion of the trial court's judgment awarding Ashby, Inc. $80,000 for costs of repair to the building; $90,000 for lost inventory; $20,000 for business interruption loss; $50,000 for loss of credit; $75,000 for lost investment in land and improvements; and $10,000 as damages for breach of the common-law duty of good faith and fair dealing. We reverse that portion of the trial court's judgment awarding damages on Ashby, Inc.'s claims

---

[13] Ashby also complains, at some length, about State Farm's actions at the trial court level. These activities are beyond the scope of rule 84.

for lost past corporate profits and lost future corporate profits, and render judgment that Ashby, Inc. take nothing on those claims. We reverse the trial court's judgment to the extent that it awarded prejudgment interest on future damages and attorneys' fees. We render judgment that Ashby, Inc. is not entitled to recover prejudgment interest on future damages, there being no recovery thereof, or its attorneys' fees. We remand this cause for recalculation of prejudgment and postjudgment interest because the amount of the judgment has changed. We also remand this cause for recalculation of attorneys' fees based on the reduction in Ashby, Inc.'s recovery.[14] *See Loomis v. Blacklands Prod. Credit Ass'n.*, 579 S.W.2d 560, 564 (Tex. Civ. App.--Waco 1979, writ ref'd n.r.e.); *Petroleum Casualty Co. v. Canales*, 499 S.W.2d 734, 738 (Tex. Civ. App.--Houston [1st Dist.] 1973, writ ref'd n.r.e.). The trial court shall enter judgment consistent with this opinion.

WILL BARBER
JUSTICE

Thomas, C.J., dissenting opinion

Do Not Publish
Tex. R. App. P. 90
921354F.U05

---

[14] The jury awarded attorney's fees through the trial in an amount of 33 1/3 percent of the total recovery.